273 So.2d 117 (1973)
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant,
v.
Terri L. THOMAS, a Minor, by and through Her Mother and Next Friend Kathryn Thomas, and Kathryn Thomas, Individually, Appellees.
No. 71-90.
District Court of Appeal of Florida, Fourth District.
February 12, 1973.
Rehearing Denied March 7, 1973.
*118 Jeanne Heyward, Miami, and Eugene L. Heinrich of McCune, Hiassen, Crum, Ferris & Gardner, Fort Lauderdale, for appellant.
Robert Orseck, of Podhurst, Orseck & Parks, Miami, and Edward L. Middlebrooks, of Ferrero, Middlebrooks & Houston, Fort Lauderdale, for appellees.
OWEN, Judge.
The plaintiffs in a personal injury action obtained a judgment against the defendant-tort-feasor (an insured under a homeowner's policy issued by St. Paul Fire & Marine Ins. Co.). Plaintiffs then brought this action against St. Paul to recover the amount of that judgment plus attorney's fees. The non-jury trial resulted in a judgment favorable to the plaintiffs. St. Paul appeals, raising the primary question of whether its policy afforded coverage at all, and if so, the collateral question of St. Paul's liability for that portion of the judgment against its insured which exceeds the policy limits.
The facts necessary for a consideration of these questions can be stated rather simply.
Terri L. Thomas, a minor, sustained serious personal injuries when a 1957 Renault automobile in which she was a passenger went out of control, left the roadway and overturned several times. She and her mother filed a complaint against one Herminio Roig as defendant, alleging that the injuries and damages were the fault of Roig who "... did carelessly and negligently throw a pop bottle from a vehicle, which was in the process of passing, or had just passed a 1957 Renault in which Terri L. Thomas was riding as a passenger and as a result of the throwing of said pop bottle from a moving vehicle into the path of the 1957 Renault ..." caused the accident and the resulting personal injuries.
At the time of this occurrence, Herminio Roig was an insured under a standard homeowner's policy issued by St. Paul in which coverage "E" provided personal liability coverage up to a limit of $25,000. When St. Paul became aware of the suit against Roig, its investigator took a written statement from Roig who stated (contrary to the allegations of the complaint) that at the time of the incident he was driving his father's car, saw a bottle in the road, swerved to miss it but was unsuccessful, and it was this broken bottle which caused the 1957 Renault automobile to go out of control and overturn. A passenger in Roig's car gave a factually similar statement.[1] Based upon this investigation, and primarily the statement from its insured, St. Paul determined that it did not have coverage, relying upon a "Special Exclusion" *119 in the policy which provided that the policy did not apply:
"(b) Under coverages E and F, to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles or midget automobiles while away from the premises or the ways immediately adjoining...."
St. Paul thereupon declined to furnish Roig a defense in the personal injury litigation.
Roig was also an insured under an automobile liability insurance policy issued by National Service Fire Insurance Company, which insurer accepted the defense of the personal injury litigation under a reservation of rights. During the course of the personal injury litigation National Service Fire became insolvent, and the attorneys retained by it to defend Roig were permitted to withdraw from representation. Thereafter, Roig was not represented by counsel. Subsequently he suffered a summary judgment on liability and the case went to trial on damages only. The jury verdict for plaintiffs was in the total amount of $119,000.00 for which amount final judgment was entered against Roig.
Immediately after the judgment was entered, plaintiffs' counsel notified St. Paul in writing that the plaintiffs would compromise and settle their judgment against Roig for the limits of coverage provided under St. Paul's homeowner's policy, which plaintiffs' counsel stated "was understood to be $25,000.00". St. Paul promptly rejected such settlement offer. The plaintiffs then obtained from Roig an assignment of any claim he might have against St. Paul, and instituted the present suit in which they sought and recovered the full amount of their judgment against Roig, plus attorney's fees.
The primary question is whether St. Paul's policy provided personal liability coverage to Roig for the negligent conduct alleged in the complaint.[2] If not, St. Paul had neither the duty to defend nor the duty to pay any judgment rendered against Roig, and the present judgment must be reversed. However, if the policy did provide coverage, then St. Paul clearly breached its duty to defend Roig and we must then determine what effect that breach of duty, as well as St. Paul's subsequent conduct, had upon its liability to its insured.
By the insuring agreement in this policy, St. Paul agreed "... to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury ... .". Under this broad, comprehensive language coverage for the insured's legal liability is provided unless expressly excluded. Thus, the answer to the coverage question lies in determining whether Roig's liability (for injuries caused by his negligently throwing a pop bottle from a moving vehicle in which he was riding as a passenger) is within the policy exclusion pertaining to use of an automobile [away from the premises].
The meaning of the exclusion is not clear. It says merely that the policy "Does Not Apply * * * to the * * * use * * * of (1) automobiles * * *". There is no language which expressly states what, if any, nexus or connection must exist between the insured's liability and the use of an automobile. However, some connecting link is necessarily implied, or else the exclusion *120 would be meaningless. See Brenner v. Aetna Ins. Co., 1968, 8 Ariz. App. 272, 445 P.2d 474. But how strong or weak must that connection be? For example, does this mean that the policy does not apply to a liability incurred "while using" the automobile? Then clearly the exclusion applied in this case because Roig's liability arose "while using" the automobile, (i.e., by riding in it. See American Fire & Casualty Co. v. Blanton, Fla.App. 1966, 182 So.2d 36). On the other hand, does this language mean that the exclusion applies only if the liability is one "caused by" the use of the automobile? Then just as clearly the exclusion did not apply since there was no causal connection between Roig's use of the car and his liability  his liability attached because of his negligent conduct in throwing the bottle onto the roadway, not in riding in the car.
Since there is an ambiguity as to whether the nature of the causal connection [between the liability and the use of the automobile] necessary to bring the activity within the ambit of the exclusion must be strong or direct (i.e., "caused by"), or may be weak and remote (i.e., "while using"), we are constrained to follow the well settled and almost universally accepted principle of construing the exclusion in a manner which affords the broadest coverage. Harris v. Carolina Insurance Co., Fla. 1970, 233 So.2d 833; National Automobile Ins. Assoc. v. Brumit, Fla. 1957, 98 So.2d 330. We conclude that before the policy exclusion would become applicable, the liability would have to be caused by the use of the automobile. Clearly, such did not occur in this case.
A number of courts, in considering the causal connection which must exist between the injury and the use of the automobile [in order to make applicable an exclusionary clause of the type involved here] have adopted the test of "arising out of", which is the language used in the insuring agreement of the standard automobile liability insurance policy.[3] There is indeed considerable merit and logic to such a view, if we assume that the underwriting intent is for the automobile policy and the homeowner's policy to be complementary to one another, that is, that the coverage under one takes up where the other leaves off, with neither hiatus nor overlapping of such coverage. On this premise it would be entirely proper to conclude that if the injury must "arise out of" the use of the automobile in order to be within coverage of the automobile policy, then the same test should apply in determining whether the injury or liability is within the exclusionary clause of the homeowner's policy. But, so far as we are aware, no court has permitted the exclusionary clause of the personal liability policy to become applicable where the causal connection between the injury and the use of the automobile was not at least as strong as the "arising out of" standard required under the automobile policy.[4]
The words "arising out of" have been viewed as words of much broader significance than "caused by", and have been said to mean "originating from", "having its origin in", "growing out of" or "flowing from", or in short, "incident to" or "having connection with" the use of the car. Schmidt v. Utilities Insurance Co., 1944, 353 Mo. 213, 182 S.W.2d 181; National Indemnity Co. v. Corbo, Fla.App. 1971, 248 So.2d 238. Even if we were to apply to this case the broader test of "arising out of", we have the view that Roig's liability did not arise out of the use of the automobile. His location in the automobile at the *121 time of the occurrence was fortuitous, merely the situs of his physical being at the time. His liability arose out of negligently throwing the bottle in the roadway. It would not have been altered or affected had he in a similar manner negligently thrown a bottle into the roadway while seated in a car parked on the shoulder of the road, or while standing outside of the car, or while standing on an overpass above the roadway.
Counsel for both parties have filed excellent briefs in this case citing in support of their respective positions on this issue respectable authority from many jurisdictions. That the issue is neither clear cut nor without differing views is illustrated by a sampling of some of the cases cited by appellees[5] and appellant.[6]
Concluding, as we do, that St. Paul's policy provided coverage to Roig for the conduct alleged in the complaint, the insurer's refusal to defend the action was a breach of its contract, rendering it liable up to the limits of its policy for any judgment entered against its insured. American Fidelity Fire Ins. Co. v. Johnson, Fla.App. 1965, 177 So.2d 679; Seward v. State Farm Mutual Automobile Ins. Co., D.C.S.D.Fla. 1966, 261 F. Supp. 805; aff'd Seward v. State Farm Mutual Automobile Ins. Co., 5 Cir.1966, 392 F.2d 723; Burton v. State Farm Mut. Auto. Ins. Co., 5 Cir.1964, 335 F.2d 317; Hendry v. Grange Mut. Cas. Co., 5 Cir.1967, 372 F.2d 222.
Did St. Paul's subsequent conduct in refusing the settlement offer subject it to liability for the excess over its policy limits? We conclude (as did the trial court) that this question should be answered in the affirmative. Because we base our conclusion on the theory of damages flowing from breach of contract, we need not pursue appellant's argument to the effect that the trial court erred in basing its conclusion on a finding that St. Paul was guilty of "bad faith".[7]
*122 By its contract St. Paul had agreed to pay on behalf of Roig all sums which the latter became legally obligated to pay as damages because of bodily injury. The judgment against Roig for $119,000.00 was within this classification. Since St. Paul had washed its hands of the case and obviously had no intention to then assume the defense and take an appeal on Roig's behalf, its contractual obligation to pay matured. Furthermore, the obligation to pay existed even in the absence of a demand or settlement offer from the judgment creditor. The failure of St. Paul to pay the policy limits after judgment was thus a breach of contract subjecting the insurer to damages.
It was the settlement offer and its subsequent refusal which altered the foreseeable damages flowing from such breach. Absent the settlement offer, the insured was damaged by the insurer's breach only to the amount which the insurer had agreed to pay, i.e., $25,000.00. But when the judgment creditor offered to accept the $25,000.00 policy limits in full payment and satisfaction of the $119,000.00 judgment against Roig, and in the face of such offer St. Paul breached its obligation to pay, the damage to Roig was immediate and foreseeable. Instead of the judgment against him being satisfied and his slate wiped clean, Roig remained liable for the entire amount of the judgment. Roig's claim for these damages having been assigned to appellees, the latter were properly awarded judgment against appellant for the full amount thereof.
The judgment is affirmed.
WALDEN and MAGER, JJ., concur.
NOTES
[1] Both Roig and the passenger gave substantially identical testimony under oath in a deposition taken during the course of the litigation.
[2] While it is true that under Roig's version of the facts he was clearly within the policy exclusion (because of operation of an automobile while away from the premises), his version even if true had no bearing on St. Paul's duty under the policy to defend Roig in the personal injury action. The insurer's duty to defend its insured is governed solely by the allegations of the complaint against the insured. Bennett v. Fidelity & Casualty Co. of New York, Fla.App. 1961, 132 So.2d 788; Burton v. State Farm Mutual Automobile Ins. Co., 5 Cir.1964, 335 F.2d 317.
[3] "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury ... arising out of the ... use of the automobile... ."
[4] ef., Richland Knox Mutual Ins. Co. v. Kallen, 6 Cir.1967, 376 F.2d 360.
[5] For example, among the cases cited by appellees as holding that the injury did not "arise out of" the use of the automobile are the following: Speziale v. Kohnke, La. App. 1967, 194 So.2d 485 (injury to a pedestrian resulting from the throwing of fireworks from a moving vehicle); National Union Fire Ins. Co. of Pittsburgh, Pa. v. Bruecks, 1966, 179 Neb. 642, 139 N.W.2d 821; Mason v. Celina Mutual Ins. Co., 1967, 161 Colo. 442, 423 P.2d 24; Brenner v. Aetna Ins. Co., 1968, 8 Ariz. App. 272, 445 P.2d 474; United States Fidelity & Guaranty Co. v. Western Fire Ins. Co., Ky.App. 1970, 450 S.W.2d 491; and American Liberty Ins. Co. v. Soules, 1972, 288 Ala. 163, 258 So.2d 872 (all of which cases involved a passenger either riding or seated in an automobile accidentally shot by a fellow passenger for whom coverage was the issue).
[6] Among the cases which appellant cites as holding that the injury or liability was one "arising out of" the use of the vehicle, and thus either provided coverage under the automobile policy or excluded coverage under the homeowner's policy, are the following: Fidelity & Casualty Co. of New York v. Lott, 5 Cir.1960, 273 F.2d 500 (passenger in car struck and killed by rifle bullet while insured was using the top of the automobile as a gun rest for sighting); Kanios v. Frederick, 1960, 10 Wis.2d 358, 103 N.W.2d 114 (an arm signal given by the insured operator of a motionless vehicle which caused two other cars to collide); McDonald v. Great American Ins. Co., U.S.D.C.R.I. 1963, 224 F. Supp. 369 (automobile passenger who threw a lighted "cherry bomb" into a passing motor vehicle causing injury was within the exclusionary clause of his homeowner's policy); National Indemnity Co. v. Corbo, Fla.App. 1971, 248 So.2d 238 (dog, while being transported in the family car to the family dry cleaning plant to be left overnight as a watchdog, bit a passenger in the car).
[7] Substantially all of the cases which have held the insurer liable for the excess over the policy limits on the basis of "bad faith refusal to settle" involve refusal of a settlement offer prior to verdict and judgment. See the cases and authorities collected and discussed in the article by W. Scott Lovejoy, III, entitled "Insurer's Excess Liability" in III Stetson Intramural Law Review 21, and in 40 A.L.R. 2d 168. When the insured's legal liability, or the amount thereof, remains undetermined, the insurer's duty is to negotiate for settlement in good faith, and obviously the issue of good faith (or the lack thereof) is necessarily involved. Where, as here, the insured's liability and the amount thereof have been determined, good faith is no longer a necessary factor. We can also reject appellant's argument "that it was in good faith in denying coverage because it did so upon an honest belief supported by advice of counsel". An insurer which denies coverage on the mistaken but honest belief that coverage does not exist, does so at its own risk. Comunale v. Traders & General Ins. Co., 1958, 50 Cal.2d 654, 328 P.2d 198.