378 So.2d 28 (1979)
WEST AMERICAN INSURANCE COMPANY, Appellant,
v.
Sidney SILVERMAN, Etc., American Mutual Liability Insurance Company, Etc. et al., Appellees.
Nos. 77-14 to 77-17.
District Court of Appeal of Florida, Fourth District.
November 28, 1979.
Rehearing Denied January 21, 1980.
*29 James A. Smith of Wicker, Smith, Blomqvist, Duvant, McMath, Tutan & O'Hara, Miami, for appellant.
Maurice Fixel of Meyer, Leben, Fixel & Cantor, P.A., Hollywood, for appellee, Silverman.
Pomeroy, Betts & Wiederhold, Fort Lauderdale, and Joe N. Unger, Law Offices of Joe N. Unger, Miami, for appellees, American Mut. Liability Ins. Co. and Dana Weinstein.
Stephen W. Bazinsky of Walton, Lantaff, Schroeder & Carson, Fort Lauderdale, for appellee, Hartford.
BERANEK, Judge.
This is a consolidated appeal involving three insurance carriers in a wrongful death and personal injury suit and counterclaim below. The particular question involved here is the duty to defend the counterclaim.
David Weinstein was driving a car owned by his mother and insured by American Mutual Insurance Company. Bruce Silverman was killed while riding as a passenger in the Weinstein car when it struck a guard rail. No other vehicle or third party was involved in the accident.
The passenger, Silverman, had an automobile liability policy with Hartford Accident and Indemnity and a homeowner's policy with West American Insurance Company.
Plaintiff, the Silverman estate, sued the driver, Weinstein, and his auto liability carrier alleging negligence and coverage. The driver answered and counterclaimed alleging that the passenger/plaintiff had caused the accident by grabbing the driver's arm causing the car to go out of control resulting in the collision with the guard rail.
Eventually, the plaintiff amended the complaint and joined all three insurance carriers asserting entitlement to a defense of the driver's counterclaim by at least one of the three carriers. Numerous motions for summary judgment regarding the duty to defend were filed. The Circuit Court found that the duty to defend the counterclaim rested on the plaintiff's homeowner's insurance carrier, West American Insurance Company. This homeowner's carrier appeals and all other insurance carriers and parties occupy the positions of appellees.
A carrier's duty to defend is governed solely by the allegations of the complaint (here defendant's counterclaim) against the insured. Bennett v. Fidelity & *30 Casualty Co. of New York, 132 So.2d 788 (Fla. 1st DCA 1961). This applies to automobile policies and to homeowners' policies. St. Paul Fire & Marine Insurance Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA 1973). If a complaint contains allegations some of which would be within the policy coverage and some of which are not, then the carrier has a duty to defend the case. The duty to defend is often said to be greater than the eventual duty to pay under applicable coverage. Thus, a carrier may have a duty to defend a complaint filed against an insured and it may eventually be determined that no coverage actually exists for the claim as proven. Accredited Bond Agencies, Inc. v. Gulf Insurance Co., 352 So.2d 1252 (Fla. 1st DCA 1977).
The issue involved here is the duty to defend the counterclaim and it is from the allegations of this pleading alone that this duty is determined. The counterclaim contained the following relevant allegations:
3. On or about November 30, 1974, the Counterclaimant was operating a motor vehicle on State Road # 7, south of Bailey Road, south of the City of North Lauderdale, Broward County, Florida when the Decedent, Bruce Silverman, grabbed hold of and pushed and/or pulled on the arms of the Counterclaimant wherein the Decedent, Bruce Silverman, took control of said vehicle causing said vehicle to go out of control and collide with a guardrail and overpass.
4. The Decedent, Bruce Silverman, so negligently and carelessly took control of said vehicle that it was taken from the control of the Counterclaimant causing said vehicle to collide with a guardrail and overpass.
These allegations were found to be within the coverage of the West American homeowner's policy. This policy contained the following relevant language:
COVERAGE E  PERSONAL LIABILITY
This Company agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. The Company shall have the right and duty . . to defend any suit ... seeking damages on account of such bodily injury ...
This policy does not apply:
1. Under Coverage E  Personal Liability and Coverage F  Medical Payments to Others;
a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:
* * * * * *
... (2) any motor vehicle owned or operated by, or rented or loaned to any Insured; ...
The Hartford automobile policy issued to Silverman contained the following relevant language:
PART I  LIABILITY
1. Coverage A  Bodily Injury Liability: Coverage B  Property Damage Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person;
B. injury to or destruction of property including loss of use thereof, hereinafter called "property damage"; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.
* * * * * *

*31 Persons Insured: The following are insureds under Part I:
* * * * * *
(b) With respect to a non-owned automobile,
(1) the named insured,
(2) any relative, but only with respect to a private passenger automobile or trailer,
provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission....
The American Mutual Liability Insurance Company policy was not formally made a part of the record but the parties have agreed this policy contained a standard liability provision covering Weinstein's liability arising out of the use of an automobile. This policy provision is the same as that contained in the Hartford policy.
The crux of this case is whether the alleged grabbing of the driver's arm by a passenger with a resulting accident may be said to create liability arising out of the use of an automobile. If so, then coverage may arguably be under an auto liability policy. On the other hand, if the grabbing of the driver's arm by the passenger does not create liability arising out of the use of an automobile, then coverage and a duty to defend exists under the homeowner's policy of the passenger. This is so since the automobile policy expressly includes coverage for the "use of an automobile," and the homeowner's policy expressly excludes coverage for injury arising from the "use of an automobile." Clearly, these two standard policies are intended to be complementary and not overlapping. Of importance, then, is the distinction as to who was using the car; that is, the passenger or the driver under the alleged facts.
Use of an automobile has been broadly defined in Florida in the context of automobile and homeowners' policies. Three opinions are of particular importance. St. Paul Fire & Marine Insurance Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA 1973); Valdes v. Smalley, 303 So.2d 342 (Fla. 3d DCA 1974); and the Supreme Court's denial of certiorari in the same case reported in National Ben Franklin Insurance Co. v. Valdes, 341 So.2d 975 (Fla. 1977). All deal directly with the question of use of an automobile. The St. Paul and Valdes opinions deal with the question from the standpoint of an inclusionary auto liability policy provision and an exclusionary homeowner's policy provision. In a four-three decision denying certiorari the Florida Supreme Court held no conflict exists between the St. Paul and Valdes cases. See National Ben Franklin Insurance Co. v. Valdes, supra.
The Third District's opinion in Valdes as further construed by the Supreme Court involved a suit by an injured third party against both the driver of a car and his passenger. The automobile liability carrier for the driver and the automobile liability carrier for the passenger were also sued. The driver was allegedly negligent in the operation of his vehicle, and the passenger allegedly negligent in the throwing of a beer mug from the moving automobile. The trial court granted summary judgment in favor of both automobile liability carriers holding that the accident did not arise out of the use of an automobile. The Third District Court of Appeal reversed, holding the death from the thrown beer mug arose out of the use of an automobile. It was held that both automobile carriers had coverage in the situation. The passenger's throwing of a beer mug from the moving automobile was thus necessarily held to be use of a non-owned automobile by the passenger and his automobile liability carrier was required to defend along with the driver's carrier.
In St. Paul Fire & Marine Insurance Co. v. Thomas, supra, this District was presented with a similar but distinguishable factual situation. Here again a third party was injured when a passenger in another car threw a bottle out of the car window. This injured third party sued the defendant passenger only and the passenger's homeowner's liability carrier denied coverage. The injured third party successfully secured a *32 personal injury judgment against the defendant passenger and subsequently sued this party's homeowner's carrier which defended based on the same policy exclusion as is now asserted in the instant case. This District reached a slightly different conclusion from that of the Third District in Valdes. It was held that the throwing of the bottle from the moving automobile did not entail liability caused by or arising out of use of an automobile by the passenger. Since liability for throwing the bottle did not come within the exclusion of the homeowner's policy, it was covered by the homeowner's policy, and the homeowner's carrier was eventually found liable on an excess cause of action.
The Valdes precedent would seem to indicate that the passenger's own automobile liability policy should provide a defense herein. St. Paul seems to indicate the passenger's grabbing of the driver's arm would not constitute use of an automobile and that liability arising out of such an accident would be within the coverage provided under the homeowner's policy as an occurrence not growing out of the use of an automobile. It is a close question.
Comment should be made on the public policy considerations present in auto use inclusions and exclusions within automobile and homeowners' policies. St. Paul and Valdes both thoroughly discuss these issues and collect the many Florida and out-of-state cases which have reached conflicting decisions on the same point. We stress that the instant fact situation does not present a question as to an injured third party. Insurance coverage considerations for an insured in a suit by a third party might well be viewed differently and not depend upon the niceties and complexities of varying definitions of "use of an automobile." A third party may be injured as a result of the combined negligence of a driver and his passenger. For example, if the vehicle in this case had struck an innocent pedestrian, we can envision allegations that the driver who had been drinking should have expected and guarded against a bump on the arm by his friend and passenger who was also drinking. The liability of the driver or passenger might well arise out of the use of an automobile.
Here the situation is more confined and limited solely to a consideration of the conduct between the driver and his passenger. Comparative negligence considerations between these two parties and the value of their respective claims against each other will determine if either party becomes legally obligated to pay an eventual judgment. Whether such a legal obligation to pay is within the coverage of any particular policy is a question which may not yet be determined.[1] The issue here is solely that of a duty to defend and under all of the circumstances and the somewhat inconsistent precedents, we conclude that the actions of the passenger in grabbing the arm of the driver are not such as give rise to liability arising out of the use of an automobile. As such, the policy exclusion within the homeowner's policy was not applicable and the trial court's summary judgment was correct. The passenger's homeowner's policy should thus provide the defense of the counterclaim which does not arise out of use of a motor vehicle.
Appellant also seeks to contest the trial court's award of attorney's fees, but the absence of a record of the evidentiary hearing concerning this award of fees prevents us from reviewing this issue. Appellant has indicated this evidentiary hearing was not reported and that a transcript thereof is not available.
The summary judgment and award of attorney's fees are thus affirmed.
AFFIRMED.
DOWNEY, C.J., concurs.
BAKER, JOSEPH P., Associate Judge, concurs specially with opinion.
*33 BAKER, JOSEPH P., Associate Judge, concurring.
I concur with Judge Beranek's opinion and the decisions reached, but it needs to be emphasized that our affirming of the trial judge is nothing more than affirming his construction of the allegations quoted by Judge Beranek from the counterclaim. The plaintiff-counterclaimant-appellant argues that those two paragraphs alleged that the passenger "took control" of the vehicle. The trial judge and we are holding that the allegation that the passenger "took control", is a conclusion, which, when read in the context of the ultimate facts alleged in the quoted portions of the pleading, amounts to alleging nothing more than, "The passenger negligently and carelessly caused the driver to lose control of the vehicle."
The phrase, "took control", in the context of the counterclaim, is not sufficient to establish an intentional, purposeful act by the passenger to exercise control over the vehicle, that is, to "use" the vehicle. If it were sufficient, the duty to defend on the counterclaim would be that of the passenger's automobile liability carrier under the reasoning of Judge Beranek's opinion.
NOTES
[1] The summary judgment appealed from provides "that this ruling goes only to the duty of West American Insurance Company to defend the counterclaim and not to the ultimate question of which insurance company, if any, may be required to pay judgment obtained on the counterclaim.