CONNER, J.,
concurring specially.
I agree with the majority that Nicho’s horseplay could not be considered use of a non-owned car with permission, but I disagree with the majority that his horseplay did not constitute “use” of the car. In my view, his horseplay rose to a level to which it can be said he was co-driving the car with Carley.
An automobile is a transportation device used to travel from Point A to Point B by a combination of controlling a steering wheel, a gas pedal, and a brake. Although one normally thinks of a vehicle being driven by one driver at a time, any person who exerts physical control, either singularly or in combination, over the steering wheel, the gas pedal, or the brake pedal can be said to be involved in “driving” the vehicle, if the vehicle is moving at the time. Thus, if two people are physically controlling the steering wheel at the time the vehicle is moving, both are exerting control over the movement of the vehicle and should be considered as “driving” and “using” the vehicle in the context of what is insured by an automobile policy. I also contend my view of what is meant by “driving” and “use” of a vehicle is consistent with subsection 324.021(3), Florida Statutes (2007), which defines an operator of a motor vehicle under the financial responsibility law as “[ejvery person who is in actual physical control of a motor vehicle.”
My view of what constitutes driving also comes from dictionary definitions. One of the definitions of “driver” is “a person who steers and propels a vehicle.” Black’s Law Dictionary 533 (8th ed. 2004). Webster’s Ninth New Collegiate Dictionary defines the verb “drive” as “to operate the mechanism and controls and direct the course of.” Webster’s Ninth New Collegiate Dictionary 384 (1990 ed). Black’s Law Dictionary also defines “driving” as “of the act of directing the course of something, such as an automobile.... ” Black’s Law Dictionary 533 (8th ed. 2004).
The majority and the appellee place considerable reliance on our decision in West American v. Silverman, 378 So.2d 28 (Fla. 4th DCA 1979). The negligent conduct in Silverman was a passenger pulling on the arm of the driver while the driver was driving, causing the driver to lose control of the vehicle, which killed the passenger.
As the majority points out, in Silverman we said, “Of importance, then, is the distinction as to who was using the car; that is, the passenger or the driver under the alleged facts.” Id. at 31. The complaint in Silveman alleged “the Decedent, Bruce Silverman, grabbed hold of and pushed and/or pulled on the arms of the Counter-claimant wherein the Decedent, Bruce Sil-verman, took control of said vehicle causing said vehicle to go out of control and collide with a guardrail and overpass,” and “[t]he Decedent, Bruce Silverman, so negligently and carelessly took control of said vehicle that it was taken from the control of the Counterclaimant causing said vehicle to collide with a guardrail and overpass.” Id. at 30. We also said “[i]t is a close question” as to whether the homeowner’s policy or the automobile policy should provide a defense. Id. at 32. Immediately after stating “[i]t is a close ques *261 tion,” we launched into a public policy discussion as to which insurance policy should control, and stated, “We stress that the instant fact situation does not present a question as to an injured third party,” and suggested that if a third party had been hit, our ruling would be that the automobile policy would cover the situation. Id. However, because the situation in Silver-man “is more confined and limited to a consideration of the conduct between the driver and his passenger,” because there were issues of comparative negligence between the driver and the passenger, and because we felt there were “somewhat inconsistent precedents,” we concluded “the actions of the passenger in grabbing the arm of the driver are not such as to give rise to liability arising out of the use of an automobile” for purposes of which policy had to provide a defense. Id. Footnote 1 of the opinion made it clear that we did not decide which policy might ultimately be responsible for payment of the claim.[2] Id. at 32 n. 1.
I submit it is important to note a point made in the concurring opinion in Silver-man by Associate Judge Baker. He pointed out that in affirming the trial judge, the appellate court was agreeing with the trial court’s construction of the language in the complaint that Silverman “took control” of the vehicle as “nothing more than, ‘The passenger negligently and carelessly caused the driver to lose control of the vehicle.’ ” Id. at 33 (Baker, Associate Judge, concurring). Judge Baker went on to point out:
The phrase, “took control”, in the context of the counterclaim, is not sufficient to establish an intentional, purposeful act by the passenger to exercise control over the vehicle, that is, to “use” the vehicle. If it were sufficient, the duty to defend on the counterclaim would be that of the passenger’s automobile liability carrier under the reasoning of Judge Beranek’s opinion.

Id.

A close reading of Silverman also suggests that both the driver and the passenger had been drinking prior to the crash. Although the facts of the case are not stated in detail in the opinion, it is likely the factual scenario in Silverman is that the intoxicated passenger was grabbing the intoxicated driver’s arm either as horseplay or to get the driver’s attention during a friendly discussion or an argument, without any intention to affect the steering of the vehicle. If that was the case, it is entirely logical to hold the homeowner’s policy should provide a defense. But as the concurring opinion points out, if the passenger was intending to control the steering of the vehicle by grabbing the driver’s arm, then the auto policy should provide the defense.
In this case, it appears the horseplay was intentionally directed to affect the steering of the vehicle. Although there is no evidence that Nicho’s grabbing of the steering wheel caused the vehicle to swerve, that makes no difference because his actions show he was intending to exert physical control over the steering of the vehicle, even if it was to have the vehicle continue on a straight path. Because his actions were intended to physically control the steering of the vehicle as it was transporting the occupants, I contend he was “using” and jointly “driving” the vehicle. Therefore, I believe the trial court erred in finding Nicho did not “use” or “drive” the vehicle in its Final Declaratory Judgment.
*262 However, I would affirm the trial court because the language of the auto policy limits coverage for driving non-owned vehicles to situations in which the “use of ... a non-owned auto” (driving) is “with the permission of the owner and within the scope of that permission.” Appellee is correct that “[i]t seems difficult to understand how [Nicho’s] horseplay would constitute ‘driving the non-owned auto’ with ‘the permission, or reasonably believed to be with the permission of the owner and within the scope of that permission.’” As noted by the majority, courts have required that homeowner’s policies and auto policies be construed to leave no gap in coverage. Since Nicho’s “use” of the vehicle was not a “use of ... a non-owned auto” with permission as required by the auto policy, the trial court correctly determined the coverage should be under the homeowner’s policy.

. In the body of the opinion we specifically stated, “Whether such a legal obligation to pay is within the coverage of any particular policy is a question which may not yet be determined.” Id. at 32.