355 So.2d 1261 (1978)
GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, Ltd., Appellant,
v.
John APPLETON, Appellee.
No. 77-468.
District Court of Appeal of Florida, Fourth District.
March 14, 1978.
Wallace W. Tudhope of Smalbein, Eubank, Johnson, Rosier & Bussey, Orlando, for appellant.
Michael Maher, of Maher & Overchuck, P.A., Orlando, for appellee.
ALDERMAN, Chief Judge.
General Accident Fire and Life Assurance Corporation, the defendant in the trial *1262 court, seeks review of a partial summary judgment in favor of its insured, John Appleton. Appleton claims damages under the uninsured motorist provision of his automobile liability insurance policy. General Accident admits that it extended uninsured motorist coverage to Appleton but denies liability, contending that it agreed only "to pay all sums which the insured... shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury ... sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile. ..." As will be explained, we conclude that Appleton is not entitled to recovery from his insurance company under the uninsured motorist coverage of his policy.
The facts are not in dispute. At 2:00 a.m. on the night in question, after spending some time in a bar, Appleton started to drive himself home in his automobile. Almost immediately one of his tires blew out, but he was able to drive to a nearby service station. There he discovered that all of his tires had been slashed and he was told by the service station attendant that he could not get replacement tires that night. About that time three men drove into the station. The driver offered to give him a ride home. At first Appleton said no, that he would take a cab, but after further conversation he changed his mind and left the service station in the automobile with the three men. As the automobile was being driven on the highway, the two men who were passengers in the car attacked and robbed him. He passed out and remembers nothing further until some time later when he woke up in a ditch by the side of the road. The three men in the car were subsequently arrested and prosecuted. The driver was an uninsured motorist.
In support of his contention that the bodily injury suffered by him resulted from an accident arising out of the ownership, maintenance or use of an uninsured automobile, Appleton relies upon Leatherby Insurance Co. v. Willoughby, 315 So.2d 553 (Fla.2d DCA 1975). In Leatherby the question was whether an insured under an uninsured motorist clause may recover from his own carrier because of injuries resulting from an intentional wrong by an uninsured motorist. In that case an uninsured motorist intentionally drove his truck into the plaintiff. The court acknowledged the holdings of earlier cases involving ordinary liability coverage, that public policy mandates that an intentional tort is not an accident because one ought not be permitted to indemnify himself against his intentional wrongs, but the court noted that under uninsured motorist coverage the innocent injured party, and not the intentional tort-feasor, is the insured. In that light, the court held the injury to be an accident. We do not quarrel with the holding in Leatherby. From the insured's viewpoint, he was the victim of an accident, regardless of whether the truck was intentionally or negligently driven into him, and unquestionably his injury arose out of the use of an uninsured motor vehicle.
A different situation is presented in Appleton's case. His injury was caused not by an automobile but by the fists of the criminals who assaulted him. True, the assault took place inside an uninsured automobile, but the automobile was only the physical situs of the attack, not the instrumentality of the assault as in Leatherby.
In addition to Leatherby, we have considered two other decisions by the Second District. The first, Watson v. Watson, 326 So.2d 48 (Fla.2d DCA 1976), was a wrongful death action in which the plaintiff sued her father-in-law and his insurance carrier for the death of her husband, who was killed when a pistol discharged as he was removing it from the defendant's automobile at the scene of an accident. The court said that the term "arising out of" does not require a showing of proximate cause between the accident and the use of the automobile, but that there must be a causal connection or relation between the two for liability to exist. The court then held that there was not a sufficient causal relation because the automobile was merely *1263 the physical situs of the accidental discharge of the pistol which could have occurred anywhere. That the fatal event occurred at or near the automobile was fortuitous. In the second case, Feltner v. Hartford Accident and Indemnity Co., 336 So.2d 142 (Fla.2d DCA 1976), the court, in denying a claim under the Personal Injury Protection provision of an automobile liability policy, held that injuries suffered by an insured, who had just driven a young woman to her boyfriend's house and then returned her to her home when he was attacked by her father, did not arise out of the ownership, maintenance or use of an automobile. The court rejected the contention that the use of the automobile was an integral part of the events surrounding the attack, finding that its use was only incidental to the assault. From Watson and Feltner we conclude that it is not enough that an automobile be the physical situs of the injury or that the injury occur incidentally to the use of an automobile, but that there must be a causal connection or relation between the two for liability to exist.
Two cases from the Third District have been considered in formulating our conclusion. The court in National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla.3d DCA 1971), decided that an automobile liability insurance carrier was obligated to provide a defense to its insured when a passenger in the insureds' automobile was bitten by insureds' guard dog while the dog was being transported in the automobile from the insureds' home to their place of business. The automobile in that case was more than just the physical situs of the dog bite; it was being used for the specific purpose of transporting the dog. The causal connection between the dog bite and the use of the car is apparent. An analogous situation would exist if the insureds were using their automobile to transport explosives or other dangerous substances and someone was injured. In the other case, Valdes v. Smalley, 303 So.2d 342 (Fla.3d DCA 1974), cert. denied, 341 So.2d 975 (Fla. 1977), the court found that the wrongful death of a pedestrian, struck by a beer mug thrown by a passenger in a moving automobile, arose out of the use of the insured's automobile. There, the automobile from which the mug was thrown was being driven at a high rate of speed which no doubt greatly contributed to the velocity of the mug. In both Corbo and Valdes there was a factual basis for the court to find a causal connection or relation between the injury and the use of the automobile.
We recognize that bodily injury resulting from a criminal assault, under the terms of an uninsured motorist policy, may be caused by accident and arise "out of the ownership, maintenance or use of an uninsured automobile," as was the case in Leatherby. However, the risks of bodily injury from a criminal assault are not normally contemplated by the parties to an automobile liability insurance policy. For there to be coverage there must be a causal connection between the use of the automobile and the bodily injury resulting from the criminal assault. This may be established by showing that the automobile itself was used to inflict the bodily injury, as in Leatherby, or that the automobile was used in some manner that contributed or added to the bodily injury, as in Valdes. Considering the facts in this case, we conclude that Appleton failed to show a sufficient causal connection between the uninsured automobile which was the situs of the criminal assault and the bodily injury that he suffered as a result of the assault. Accordingly, we hold that the trial court erred in entering summary judgment in his favor.
REVERSED and REMANDED.
LETTS, J., concurs.
CROSS, J., dissents without opinion.