ANSTEAD, Judge.
This is an appeal from a final summary judgment denying appellant benefits under her uninsured motorist policy. We affirm.
At about 2:00 a.m. on May 2, 1982, an automobile driven by Mary Ann Roache collided with a parked car in Wilton Manors. Wilton Manors police were dispatched and arrived on the scene at about 2:15. Roache was taken into custody and brought to the Wilton Manors Police Department to be tested for intoxication. At about 2:30, a “batmobile” from the Bro-ward County Sheriff’s Office arrived. Roache got into the batmobile with appellant Sharon Webster, a police DUI specialist. While in the batmobile, Roache became violent, and attacked and injured Webster. Webster subsequently learned that the Roache vehicle was uninsured and made a claim for uninsured motorist coverage under a policy issued to her by appellee Aetna Life Insurance Company.
The uninsured motorist policy in question provided for coverage to appellant in the event of bodily injuries arising out of the ownership, maintenance or use of an uninsured motor vehicle. The supreme court has recently construed such language, in the context of a claim for lost income and medical (PIP) benefits, to have a broad meaning, requiring only “some nexus” between a vehicle and the injury. Government Employees Insurance Company v. Novak, 453 So.2d 1116, 1119 (Fla. 1984). The court in Novak found the requisite nexus to exist where the insured, upon entering the covered vehicle, refused a ride to a man and was subsequently shot and killed. Id. at 1117. The court reasoned that there was a substantial connection between the insured’s use of the motor vehicle and the injury, since the attacker was motivated by a desire to obtain a ride in the vehicle. Id. at 1119. The court followed Novak in Hernandez v. Protective Casualty Insurance Company, 473 So.2d 1241 (Fla.1985), and found the requisite nexus to exist where the insured, while driving the covered vehicle, was stopped by police for an alleged traffic violation and injured in the course of the arrest. Id. at 1242.
In deciding these cases, the supreme court expressly let stand a number of decisions finding inadequate nexus, finding them to be distinguishable on their facts. These cases include Reynolds v. Allstate Insurance Co., 400 So.2d 496 (Fla. 5th DCA 1981) (insured attacked by assailant hiding in car); General Accident Fire & Life Assurance Corp. v. Appleton, 355 So.2d 1261 (Fla. 4th DCA 1978), cert. denied, 361 So.2d 830 (Fla.1978) (plaintiff attacked by passengers in uninsured vehicle after accepting a ride); Feltner v. Hartford Accident and Indemnity Company, 336 So.2d 142 (Fla. 2d DCA 1976) (insured attacked in car by father of girl he was driving home). The court did not mention, but did not disapprove, a number of other cases in which coverage was denied, see Stonewall Insurance Company v. Wolfe, 372 So.2d 1147 (Fla. 4th DCA 1979) (minor plaintiff accidentally shot by another boy as the two were riding in rear of pickup truck); Florida Farm Bureau Insurance Company v. Shaffer, 391 So.2d 216 (Fla. 4th DCA 1980) (plaintiff shot by man in another vehicle as both vehicles proceeded down the road).
As the supreme court acknowledged in Novak and Hernandez, its holdings may not at first glance appear consistent with the long line of prior cases, noted above, which found no coverage on the grounds of an inadequate causal connection between the injury and the operation of a motor vehicle. The following passage from Hernandez may provide some insight into the kind of showing the plaintiff must make to show nexus:
We do agree with the proposition reiterated in Reynolds that “it is not enough that an automobile be the physical situs of an injury or that the injury occur incidentally to the use of an automobile, but that there must be a causal connection or relation between the two for liability to exist.” Id. at 497 (citation omitted). The automobile here was, however, more than just the physical situs of petitioner’s injury. Petitioner was using the vehicle for the purpose of transportation, *65 which use was interrupted by his apprehension by police officers. It was the manner of petitioner’s use of his vehicle which prompted the actions causing his injury. While the force exercised by the police may have been the direct cause of injury, under the circumstances of this case it was not such an intervening event so as to break the link between petitioner’s use of the vehicle and his resultant injury. We find these facts sufficient to support the requisite nexus between petitioner’s use of his automobile and his injury, thereby allowing him to recover P.I.P. benefits.
473 So.2d at 1243.
Here recovery is sought for uninsured motorist benefits. These are benefits intended to take the place of the liability insurance the uninsured motorist should have had. Such insurance is primarily designed to cover injuries caused in automobile accidents when one of the vehicles is not insured. In the present case, Webster was not injured in an automobile accident. Moreover, the uninsured vehicle was neither the situs of Webster’s injury, nor was there any logical causal connection between Roache’s operation of her uninsured vehicle and the injuries suffered by Webster. Indeed, the attack on Webster in the “batmobile” occurred almost an hour after the last use of the uninsured vehicle and in a location distant from where the Roache vehicle had collided with another vehicle. It is true that Novak and Hernandez state a clear policy in favor of liberal construction of auto insurance policies in favor of the policyholder. 453 So.2d at 1119. That remains the law of Florida. However, the relationship between the use of the uninsured vehicle and the injury in this case was so attenuated, both in time and location, that we believe it would be well beyond the plain meaning of the language of the insuring contract and the contemplation of the contracting parties to extend coverage to this factual situation.
Accordingly, we affirm the judgment of the trial court.
GLICKSTEIN, J., and FEDER, RICHARD YALE, Associate Judge, concur.