579 So.2d 154 (1991)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Claudia BARTH, Appellee.
No. 90-4.
District Court of Appeal of Florida, Fifth District.
April 4, 1991.
Rehearing Denied May 30, 1991.
*155 Steven C. Davis, Naomi R. Boyle and David P. Rhodes of Haas, Boehm, Brown, Rigdon & Seacrest, P.A., Tampa, for appellant.
C. Clyde Atkins, Jr., Ocala, for appellee.
ANTOON, J., II, Associate Judge.
On the afternoon of November 3, 1987, Claudia Barth dropped her son off at a shopping mall in Ocala. While she awaited his return she remained in the driver's seat and read. An unknown man opened the passenger's door, got into the front seat and said, "Drive, bitch." When Barth refused to drive, the man grabbed her, forced her between the seats and repeatedly beat her on the head and neck. She struggled free and fell out the driver's door. The assailant then exited the passenger's door and said, "Okay, bitch, if that's the way you want it." He then walked to another vehicle, got in, started it, and drove away.
Barth filed suit against her insurance carrier, State Farm Mutual Automobile Insurance Company ("State Farm") for personal injury protection benefits as a result of the injuries she sustained in the attack. The trial court granted Barth's motion for summary judgment, determining her injuries arose out of the operation, maintenance, or use of her vehicle, and State Farm appealed. We agree with the trial court finding sufficient connection between the vehicle and the injury and therefore affirm.
Pursuant to section 627.736(1), Florida Statutes (1987), State Farm's policy provides personal injury protection benefits "for loss sustained ... as a result of bodily injury ... arising out of ... use of a motor vehicle... ." State Farm argues that Barth's loss did not arise out of her use of the insured vehicle, but that the vehicle was merely the situs of the injury. In cases where the only connection between the vehicle and the injury is that the vehicle is the situs of the injury, no personal injury protection coverage exists. Hernandez v. Protective Casualty Ins. Co., 473 So.2d 1241 (Fla. 1985); Quarles v. State Farm Mutual Automobile Ins. Co., 533 So.2d 809 (Fla. 5th DCA 1988), rev. denied, 544 So.2d 201 (Fla. 1989). State Farm relies on Reynolds v. Allstate Ins. Co., 400 So.2d 496 (Fla. 5th DCA 1981), a case in which an unidentified assailant, hiding in the back of the insured vehicle, struck the insured, rendering him unconscious, and then drove him several miles before ejecting him from his own vehicle causing additional injury. The court found the insured's injury did not arise out of the ownership, maintenance or use of the vehicle because there was no causal connection between the automobile and the insured's injury. The court explained the automobile was just the situs of injury which was not sufficient to entitle the insured to personal injury protection coverage.
In 1984, the Florida Supreme Court decided Gov't Employees Ins. Co. v. Novak, 453 So.2d 1116 (Fla. 1984). The insured in Novak was in her vehicle when approached by a strange man asking for a ride. When she refused he fired a fatal shot into her face, pulled her from the vehicle, and drove off. The majority accepted the following reasoning of the district court in determining personal injury protection coverage was available:
[T]he shooting in this case was motivated by and a direct result of assailant's request to ride in the vehicle and the victim's refusal. [The assailant's] attempted use of the vehicle and the driver's refusal prompted the conduct that caused the injury. It must be remembered that we are not looking for a proximate causal relationship in the resolution of this case; rather the inquiry should be whether the attack upon the decedent arose out of, or flowed from, the use of the vehicle. The answer seems rather clear to us that the decedent's refusal to allow [the assailant] to ride in the car, which she was operating, demonstrates a sufficient nexus to meet the requirements of the rule requiring a causal relationship.
*156 Novak v. Gov't Employees Ins. Co., 424 So.2d 178, 180 (Fla. 4th DCA 1983). In other words, in order for a loss to "arise out of" the use of a motor vehicle, for the purpose of determining whether personal injury protection coverage exists, "some nexus" between the vehicle and the injury is all that is required. 453 So.2d at 1119. Both dissenting opinions in Novak relied upon the reasoning of Reynolds. While the majority did not necessarily disapprove Reynolds, it pointed out that "[t]he decision there turned on the plaintiff's failure to allege facts sufficient to show the nexus between the use of the car and the injuries." 453 So.2d at 1119.
Claudia Barth has alleged sufficient facts to show the nexus between the Barth vehicle and the injury sustained. There is no way of knowing the ultimate plan or motive of Barth's deranged attacker. He may have wanted to switch vehicles to avoid police detection, he may have wanted a better operating car, or he may have just wanted to assault Barth. There are countless possibilities. We are certain, however, that he wanted her to drive him for whatever reason, and that her refusal to do so brought about the beating and injury. These facts are very similar to those in Novak which we find controlling here. The attack on Barth arose out of the use of the vehicle.
AFFIRMED.
GRIFFIN, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting.
THE QUESTION IS: Does an insurance policy, providing personal insurance protection (PIP) coverage pursuant to section 627.736(1), Florida Statutes, for bodily injury "arising out of the ownership, maintenance or use of a motor vehicle" apply to personal injuries to a person seated in the driver's seat of a vehicle parked with its engine off when the injuries resulted solely from a criminal assault by a third person?
In Reynolds v. Allstate Insurance Co., 400 So.2d 496 (Fla. 5th DCA 1981), without making any demand, the assailant assaulted the insured and later removed the unconscious insured and took the vehicle. This court considered this basic question and held that the vehicle was only the situs of the assault and that neither the assault nor the injuries resulting from it arose out of the ownership, maintenance or use of the vehicle.
In Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla. 1984), the assailant asked the vehicle occupant for a ride and when she refused, the assailant shot and killed her, pulled her out of the motor vehicle and drove it off. The supreme court distinguished Reynolds and, focusing on the fact that the shooting and death appeared to be motivated, or caused, by the decedent's refusal to allow the assailant to ride in the car, held that these facts demonstrated a sufficient nexus to meet the requirement of the rule requiring a causal relationship between the use of the motor vehicle and the personal injury. Novak held that this required causal nexus is not "proximate cause" but the opinion in Novak failed to articulate the exact nature of the required nexus, in theoretical terms, helpful in resolving other cases as distinguished from the facts in Novak.
Surely a proper understanding and analysis of the reason for the statute (§ 627.736(1), Fla. Stat.) requiring PIP coverage in Florida and a proper understanding and analysis of the reason for the requirement of a nexus between the insured vehicle and a compensable personal injury should yield a principle of law to answer the basic question upon some basis other than turning it upon the subjective motives or intentions of the criminal assailant, especially where in such circumstance usually the intentions or motives of the assailant as to the victim or the insured vehicle are unknown or unclear and subject only to speculation based on inferences drawn from facts subject to varying reasonable implications. It is a poor rule of law that answers this question as to insurance coverage on the basis of speculation as to the assailant's intentions and motives. However, if that is the rule it is difficult to distinguish Novak from Reynolds as in both cases the assailant *157 dumped the occupant and took the vehicle and the inference is that the assailant desired to use the vehicle, not to kidnap the occupant. Again, if it is speculation as to the motives and intentions of the assailant that controls the insurance coverage question, this case is easily distinguishable from Novak and Reynolds because in this case the facts are that the vehicle occupant refused to drive herself and the assailant in the insured vehicle in accordance with the assailant's demand, and after the assailant assaulted and injured the occupant, the assailant abandoned the possession of the insured vehicle and drove away in another, better, vehicle over which he had pre-existing possession, dominion and control. The logical conclusion would appear to be that the assailant's desire was to abduct the occupant and only incidentally to commandeer the use of the insured vehicle to accomplish that purpose and that when his effort to effectuate his purpose was thwarted, he abandoned it, his victim, and his desired use of the insured vehicle and left the area in his own vehicle.
If speculation as to the assailant's intentions and motives is to be the rule, then the preferred conclusion would appear to be that the assailant intended to abduct the occupant for some unknown reason and that the insured vehicle was only the situs for the attempted abduction which resulted in the assault which resulted in the personal injuries. In a real sense in the usual case posing this insurance coverage question the criminal assault and resulting injuries are caused not from the occupant's "use" of the insured vehicle but because the occupant refuses to "use", i.e. drive the assailant in, the insured vehicle. If an assailant breaks into a house, demands that a vehicle owner, who is seated on a sofa in the living room watching television, get the keys to an insured vehicle which is parked in a nearby garage or driveway, and drive the assailant to some undisclosed place and the occupant refuses and is assaulted by the assailant who, frustrated, then leaves the area on foot, are the vehicle owner's injuries within the PIP insurance coverage on the insured vehicle? The difference between that hypothetical case and the facts in this case, i.e., the location of the assault as being either inside of, or outside of, the insured vehicle, appear to be meaningless in the context of PIP insurance coverage for injuries arising out of the use of the insured vehicle.
It has been said, not entirely in jest, that the first and controlling rule (Rule Number One) in cases involving insurance coverage is "the insurance company loses." If no real causal relationship is required between the injury and the vehicle, and PIP covers all injuries occurring inside an insured vehicle because sitting in a vehicle is "use" of the vehicle for the purpose of PIP coverage, and the rule requiring speculation as to the assailant's intentions is but an application of Rule Number One, it would eliminate much litigation and increase the comprehension of many if, in the context of the basic coverage question posed by this case, judges would forthrightly state the rule in its plain form. On the other hand, if the confusion results from a good faith effort to formulate an objective principle of law to provide a reasoned answer to this recurring question, there is need for much further judicial labor before there will be any success in the quest to formulate a rule of law accurately describing the required nexus between a personal injury and the "use" of the covered vehicle which does not appear to be purely result oriented.