608 So.2d 139 (1992)
FORTUNE INSURANCE COMPANY, Appellant,
v.
Renal EXILUS, Appellee.
No. 91-3318.
District Court of Appeal of Florida, Fourth District.
November 12, 1992.
Matt Hellman of Matt Hellman, P.A., Plantation and Diane H. Tutt of Diane Tutt, P.A., Fort Lauderdale, Fort Lauderdale, for appellant.
Eric L. Ansel of Ansel & Simon, P.A., and Paul J. Ansel of Law Office of Paul J. Ansel, Hollywood, for appellee.
PER CURIAM.
Fortune Insurance Company ("Fortune") appeals from a final summary judgment finding that appellee, Renal Exilus, was entitled to automobile insurance personal injury protection (PIP) benefits as a result of injuries he sustained in a shooting incident. We reverse.

FACTS
On October 5, 1989 at 11:30 P.M., Exilus was driving a 1985 Mazda automobile owned by Athyl Liveral, a friend. Liveral was a passenger in the vehicle and the two were driving from Exilus' home to Liveral's home in Fort Lauderdale. Liveral had driven his car to Exilus' home, picked him up, and they were on the way back to Liveral's home. Exilus was going to drop Liveral at his home and return home with the car because the next day Exilus was going to take Liveral's car to a body shop for repairs as a favor to Liveral.
Driving the vehicle in a westerly direction, Exilus stopped at a stop sign, looked both ways and did not see any other vehicles coming. As he proceeded slowly into the intersection, another car pulled up along side of his. An individual in the passenger seat of the other car got out of the car and asked Exilus if he knew a Haitian guy named Jean that lived in the area. Exilus stopped the vehicle he was driving and looked at the man, but before Exilus had a chance to say anything, the other man pulled open Exilus' car door. Exilus then drove away. As he was doing so, he heard gunshots. He did not close the door before he drove away, because he was afraid of the man. The front and rear windows of the vehicle Exilus was driving were shattered, and a bullet struck Exilus' *140 left leg. Exilus drove to the hospital, where he was admitted. Exilus did not know whether the police ever found the occupants of the other car.
Thereafter, Exilus sought a declaratory judgment determining that he was entitled to personal injury protection coverage under an automobile insurance policy issued by Fortune. Fortune's answer admitted the existence of an insurance policy but asserted that the shooting in which Exilus was injured did not "arise out of the ownership, maintenance or use of a motor vehicle," as required by the policy.
Both Fortune and Exilus moved for summary judgment, and at the hearing, counsel for both sides agreed that there were no material facts in dispute and that the issue presented was one of law. The trial court granted Exilus' motion for summary judgment and held that there was PIP coverage.

LAW
The parties agree that the controlling statute is section 627.736(1), which requires that automobile insurance policies, such as the one involved herein, provide PIP benefits for any "loss sustained ... as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle." Numerous cases have construed the meaning of "arising out of the ownership, maintenance, or use of a motor vehicle" in factual situations involving criminal attacks on individuals in, on, or near an insured vehicle. The cases make it clear that some connection or nexus between the injury and the use of the vehicle is required.
In Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla. 1984), the Florida Supreme Court stated that the term "arising out of the use of a motor vehicle," as used in section 627.736(1) should be construed liberally because its function is to extend coverage broadly. Id. at 1119. In Novak, the supreme court, agreeing with our decision in Novak v. Government Employees Insurance Co., 424 So.2d 178 (Fla. 4th DCA 1983), held that a sufficient nexus between the vehicle and the injury existed in that case because the assailant sought the use of the vehicle in question. The court stated:
Construction of the clause "arising out of the use of a motor vehicle" is an easier matter. It is well settled that "arising out of" does not mean "proximately caused by," but has a much broader meaning. All that is required is some nexus between the motor vehicle and the injury. E.g., Government Employees Insurance Co. v. Batchelder, 421 So.2d 59 (Fla. 1st DCA 1982); Indiana Insurance Co. v. Winston, 377 So.2d 718 (Fla. 4th DCA 1979), cert. denied, 388 So.2d 1120 (Fla. 1980); Auto-Owners Insurance Co. v. Pridgen, 339 So.2d 1164 (Fla. 2d DCA 1976); National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla. 3d DCA 1971). It is clear that in the present case, as the district court correctly concluded, there was a highly substantial connection between Ms. Novak's use of the motor vehicle and the event causing her fatal injury. Obtaining a ride in or possession of the motor vehicle was what motivated the deranged Endicott to approach and attack the deceased.

Id. at 1119 (emphasis added).
Subsequently, in Hernandez v. Protective Casualty Insurance Co., 473 So.2d 1241 (Fla. 1985), the supreme court held that coverage would apply to a motorist stopped for a traffic violation and injured by the police in removing him from his vehicle. The supreme court reiterated that some connection between the use of the vehicle and the injury was required:
We do agree with the proposition reiterated in Reynolds [v. Allstate Ins. Co., 400 So.2d 496 (Fla. 5th DCA 1981)] that "it is not enough that an automobile be the physical situs of an injury or that the injury occur incidentally to the use of an automobile, but that there must be a causal connection or relation between the two for liability to exist." Id. at 497 (citation omitted). The automobile here was, however, more than just the physical situs of petitioner's injury. Petitioner was using the vehicle for the purpose *141 of transportation, which use was interrupted by his apprehension by police officers. It was the manner of petitioner's use of his vehicle which prompted the actions causing his injury. While the force exercised by the police may have been the direct cause of injury, under the circumstances of this case it was not such an intervening event so as to break the link between petitioner's use of the vehicle and his resultant injury. We find these facts sufficient to support the requisite nexus between petitioner's use of his automobile and his injury, thereby allowing him to recover P.I.P. benefits.
Id. at 1243 (emphasis added). The court also noted that ingress and egress from a vehicle were actions connected to its use. Id.[1]
In Reynolds v. Allstate Insurance Co., 400 So.2d 496 (Fla. 5th DCA 1981), a case discussed in Novak and Hernandez, an assailant hiding in the back seat of the insured's vehicle struck and injured the insured, rendering him unconscious. The assailant then drove the vehicle for several miles, and the insured was thrown from the vehicle, causing him further injury. Noting that insurance does not cover every incident or accident that happens in a car, the Fifth District affirmed a judgment for the insurance company. The court stated:
In the absence of effects caused by its movement or ability to move, and circumstances arising from the necessity that its use requires normal ingress and egress to and from it, Padron v. Long Island Insurance Company, 356 So.2d 1337 (Fla. 3d DCA 1978), a vehicle is inherently no different from any other place or object and its existence or use becomes no more than the situs of injuries caused by accidents or intentional acts bearing no causal relationship to its nature as a vehicle... .
Id. at 497. In Novak, the supreme court did not disapprove, but rather distinguished Reynolds on the basis that Reynolds did not involve a sufficient nexus between the use of the automobile and the injury:
We do not believe that our holding necessarily implies disapproval of Reynolds v. Allstate Insurance Co., the case cited by the petitioner as being in conflict. We believe the facts of that case make it distinguishable from this one. The decision there turned on the plaintiff's failure to allege facts sufficient to show the nexus between the use of the car and the injuries.
Novak, 453 So.2d at 1119. The Hernandez opinion also distinguished Reynolds, but did not disapprove of its holding.
A review of other cases reflects the manner in which courts have determined whether a sufficient "nexus" exists to provide various forms of automobile insurance coverage. In General Accident Fire & Life Assurance Corp., Ltd. v. Appleton, 355 So.2d 1261 (Fla. 4th DCA), cert. denied, 361 So.2d 830 (Fla. 1978), the insured had car trouble and accepted a ride from the driver of another vehicle wherein he was attacked and robbed by two passengers in the vehicle. He sought uninsured motorist coverage because the driver of the vehicle in which he was riding when attacked, was uninsured. We held that there was no uninsured motorist insurance coverage on those facts because Appleton's injuries did not arise out of the ownership, maintenance or use of an uninsured automobile. We recognized that "arising out of" does not require a showing of proximate cause between the injury and the use of the automobile, but that there must be a connection or relation between the two for liability to exist:
We recognize that bodily injury resulting from a criminal assault, under the terms of an uninsured motorist policy, may be caused by accident and arise "out of the ownership, maintenance or use of an uninsured automobile,"... . However, *142 the risks of bodily injury from a criminal assault are not normally contemplated by the parties to an automobile liability insurance policy. For there to be coverage there must be a causal connection between the use of the automobile and the bodily injury resulting from the criminal assault. This may be established by showing that the automobile itself was used to inflict the bodily injury, ... or that the automobile was used in some manner that contributed or added to the bodily injury... .
Id. at 1263.
In Florida Farm Bureau Insurance Co. v. Shaffer, 391 So.2d 216 (Fla. 4th DCA 1980), rev. denied, 402 So.2d 613 (Fla. 1981), an individual riding in one car shot and injured an individual riding in another car in response to a tangerine being thrown in the general direction of the vehicle in which the individual with the gun was riding. Relying on Appleton, we held:
But, just as was true of the victim in Appleton, Shaffer's injury did not result from any incident of use of the vehicle. The fact that the tortfeasor was occupying the car at the time of the shooting was no more than incidental and did not make the injury one resulting from the use of the vehicle. To hold such a relationship alone sufficient to constitute a causal connection would logically lead to absurd consequences, such as allowing recovery under an automobile liability policy when a vehicle is simply used as the means of transporting an assailant to the location where an assault is committed. The injury was not caused by the automobile but by the gunshot. From the standpoint of causation, the injury could have occurred in the woods, in a house or anywhere else. As we stated in Appleton, supra, a criminal assault is not the usual risk anticipated under an automobile policy and for coverage to apply there must be a showing that the automobile itself was used in some manner to cause or produce the injury.
Id. at 218.
In Allstate Insurance Co. v. Famigletti, 459 So.2d 1149 (Fla. 4th DCA 1984), we reversed a judgment in favor of the insured. In that case, a neighborhood feud resulted in one neighbor shooting into the car of another neighbor and injuring a husband and wife. We held that the fact that the victims were in their car at the time of the shooting was merely fortuitous:
Mr. Famigletti intended to murder the Burches. The mere fact that he chose the site of their automobile for his attempted slaughter does not provide a sufficient nexus between the assault and the use of the car to warrant the imposition of PIP coverage.
Id. at 1150.
The Third District in Doyle v. State Farm Mutual Automobile Insurance Co., 464 So.2d 1277 (Fla. 3d DCA 1985), held that there was no PIP coverage where the insured was shot during a robbery attempt as he exited his vehicle after parking in his driveway. The court found the facts of that case to be similar to the line of cases finding no coverage where the automobile was merely the situs of an injury without a causal connection to the injury. Id. at 1279.
Two recent cases from the Fifth District held that there was no PIP coverage available for an injury caused by a criminal act which had no causal connection to the subject vehicle. In Jones v. State Farm Mutual Automobile Insurance Co., 589 So.2d 333 (Fla. 5th DCA 1991), an estranged and distraught husband abducted his wife from her place of business and transported her in a vehicle owned by the parties. While in the vehicle, the husband shot and killed the wife. PIP benefits were denied on the ground of no causal connection. In Allstate Insurance Co. v. Furo, 588 So.2d 61 (Fla. 5th DCA 1991), the insured was shot while riding as a passenger in a vehicle driven by his stepdaughter. An ex-boyfriend of the stepdaughter fired a gun at her while she was driving by his house, but the bullet struck the insured. The Fifth District held that no coverage was available:
But no case yet has found a sufficient nexus between the use of the vehicle and the injury when it has not been shown *143 that the assailant either desired possession (Novak) or use [State Farm Mut. Auto. Ins. Co. v.] (Barth) [579 So.2d 154 (Fla. 5th DCA 1991)] of the victim's automobile. In both Novak and Barth the possession or use of the vehicle was the focus of the encounter and the motivation for the attack.
In the present case, York wanted to do injury to Pagel  any place, any time. When she drove by his residence, she presented an opportunity he could not resist. He shot at her and hit Furo, not because they were in the vehicle, but because they were in the vicinity. The vehicle was merely the situs of the injury and not the cause of it.
Id. at 62 (emphasis in original text).
In Stonewall Insurance Co. v. Wolfe, 372 So.2d 1147 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 762 (Fla. 1980), the victim was sitting on the vehicle when injured and this court held that no coverage was available.
In the present case, we must determine whether there was a sufficient connection, as defined in Novak and Hernandez, between the use of the vehicle Exilus was driving, and the shooting injury he sustained. Do the facts of this case fit in the Reynolds category as merely the situs of a criminal assault or are they closer to those involved in Novak and Hernandez?
Here, there is no claim that the assailant was attempting to seize the vehicle, or that the vehicle itself was the source of the motivation or focus of the assailant. It appears that the vehicle was merely the situs of the injury. Did the assailant mistake Exilus for someone else? The known facts offer no real explanation for the shooting other than the obvious effort to shoot at Exilus as he was driving away. Under the case law, we conclude that these facts are insufficient to establish that the shooting arose from the use of the vehicle.
We concede that we are somewhat concerned about the supreme court's holding in Novak, that PIP provisions should be broadly construed to provide coverage. Obviously, there was some connection between the vehicle and the injury in the sense that Exilus was driving the vehicle when he was shot. However, we construe the case law to require more of a connection than the insured's simple use of, or presence in, the vehicle at the time of injury. We are particularly influenced by the supreme court's statement in Hernandez approving the Reynolds holding that, in order to be compensable, an injury must be more than incidentally related to the use of an automobile. If we have misconstrued the holdings in Novak and Hernandez, review is, of course, available to Exilus in the supreme court.
Accordingly, we reverse the summary judgment and remand for further proceedings consistent herewith.
ANSTEAD and HERSEY, JJ., concur.
POLEN, J., dissents with opinion.
POLEN, Judge, dissenting.
I respectfully dissent. I would affirm the trial court's finding that insurance coverage was available to Exilus because his injury arose out of his use of the insured vehicle.
First, I disagree with the majority's implicit conclusion that Reynolds v. Allstate Insurance Co., 400 So.2d 496 (Fla. 5th DCA 1981), remains viable. The same court that decided Reynolds has decided the more recent case of State Farm Mutual Automobile Insurance Co. v. Barth, 579 So.2d 154 (Fla. 5th DCA 1991). Barth allows for a more liberal interpretation of the court's holding in Novak v. Government Employees Insurance Co., 453 So.2d 1116 (Fla. 1984), than did Reynolds.
In Novak the Florida Supreme Court stated that "arising out of" as used in section 627.736(1) did not mean "proximately caused by," but rather had a much broader meaning: "All that is required is some nexus between the motor vehicle and the injury." Novak, 453 So.2d at 1119 (emphasis added). The supreme court stated that "arising out of" was framed in such a way as to express an intent to effect broad insurance coverage, and that this language should be liberally construed to extend coverage broadly. Id. While the language *144 utilized by the court in Novak may be difficult to quantify,[2] I believe the language expresses an intent that "close" cases be decided in favor of finding coverage. The instant case is just such a case.
I interpret the court's statements in Novak to mean that if the given facts of any particular case support a reasonable inference that the assault was in some way connected with the insured vehicle, it should be found that the injury arose out of the use of the insured vehicle. In the instant case, Exilus was initially approached by the assailant while driving the insured vehicle. He was encouraged to stop his vehicle by either the assailant, or the assailant's companion. Once stopped, the assailant quickly ran to Exilus' vehicle, took hold of the driver's door, and opened it. The assailant did not display a gun at this point. Rather, it was only after Exilus, frightened by the actions of his assailant, began to accelerate and drive away from the scene, that the assailant fired several shots at Exilus who was still seated inside the vehicle. Exilus was injured by this gunfire. I believe these facts support a reasonable inference that the assailant's action of firing upon Exilus flowed from Exilus' use of the insured vehicle. Under these circumstances, I would hold that a sufficient nexus existed between Exilus' injury and his use of the insured vehicle such that his injury arose out of his use of the vehicle.
Simply put, there is no justification for the disparate treatment afforded the plaintiffs in Barth and the instant case, when the only significant distinction between the two cases is that in Barth the assailant uttered the words, "Drive, bitch" before assaulting his victim, and "Okay, bitch, if that's the way you want it," after the assault. The subjective intent of Exilus' assailant should not control the issue of PIP coverage. Therefore, I would affirm.
NOTES
[1] Exilus also cites Tuerk v. Allstate Insurance Co., 469 So.2d 815 (Fla. 3d DCA 1985), rev. denied, 482 So.2d 347 (Fla.), and rev. denied, 482 So.2d 350 (Fla. 1986), as a case allowing PIP coverage. In that case, the court found a sufficient connection between the vehicle and the injury based on evidence that the plaintiffs were shot because of the type of vehicle driven. As the court there stated, "an unknown gunman searched for the occupants of a particular vehicle. ..." 469 So.2d at 816 (emphasis in original text).
[2] See State Farm Mutual Automobile Ins. Co. v. Barth, 579 So.2d 154, 156-57 (Fla. 5th DCA 1991) (Cowart, J., dissenting).