690 So.2d 718 (1997)
Robert TROTT, and Leslie A. Hurst, as mother and next best friend of Jonathan Caleb Finlayson, Appellants,
v.
William Morrison FINLAYSON, III; William Cardullo, et ux; Fortune Insurance Company; Nationwide Insurance Company; and St. Paul Fire And Marine Insurance Company, Appellees.
Nos. 96-0442, 96-0838.
District Court of Appeal of Florida, Fourth District.
April 2, 1997.
Esther A. Zaretsky of Law Offices of Esther A. Zaretsky, West Palm Beach, for appellants.
James T. Ferrara of Michaud, Buschmann, Fox, Ferrara & Mittelmark, P.A., Boca Raton, for appellee St. Paul Fire & Marine Insurance Company.
*719 Diane H. Tutt of Diane H. Tutt, P.A., Plantation, for appellee Fortune Fire Insurance Company.
POLEN, Judge.
In these consolidated appeals, Robert Trott and Leslie Hurst, the mother of Jonathan Caleb Finlayson, challenge final summary judgments entered in favor of St. Paul Fire and Marine Insurance Company (St. Paul) and Fortune Insurance Company (Fortune). We affirm both judgments.
Trott sought damages in connection with injuries sustained while assisting his friend, Leslie Hurst, retrieve Hurst's son, Jonathan Caleb Finlayson, from the home of her ex-husband, William Finlayson. When deposed, Trott explained he arrived at Finlayson's house with Hurst, and remained in Hurst's automobile while she entered the house. Trott entered the house when he heard yelling inside, and he began fighting with Finlayson. After a few minutes, Hurst, her son, and Trott fled Finlayson's house and returned to Hurst's automobile. While Trott was entering Hurst's automobile, Finlayson exited his house and began firing a gun. Trott received a gunshot wound in the leg as he entered Hurst's vehicle. He received additional wounds after entering the vehicle, as Finlayson continued firing. Trott sought damages from St. Paul, his PIP and UM insurer. Jonathan was injured when gunshots shattered the windshield of the automobile, and pieces of glass fell into the vehicle. He sought declaratory relief against Fortune, Hurst's PIP and UM insurer.
William Finlayson testified the sole purpose for firing at Trott and the vehicle was to protect his home and family, and to keep Trott from returning. When interviewed by the police, Finlayson stated he was unaware his son was in the vehicle and he had no intention of gaining possession of Hurst's automobile. Finlayson explained he retrieved his gun from his briefcase while Trott was walking out of his house, and began shooting while Trott was walking past a gate toward Hurst's vehicle.
In opposing St. Paul's motion for summary judgment, Trott relied on Hurst's answers to interrogatories in which she stated she believed her ex-husband began shooting at her automobile because he heard the vehicle start and saw Hurst starting to back out of his driveway. Hurst stated: "I guess [Finlayson] was shooting at the car in an attempt to prevent me from taking our son, Caleb, away from the house." Trott argued Hurst's admission raised an issue for the jury regarding whether Hurst's use of the vehicle caused Trott's injuries.
Viewing the facts in the light most favorable to Trott, Finlayson arguably fired at Hurst's vehicle to stop the vehicle and retrieve his son. Even under this most favorable scenario, no PIP coverage exists because Trott's injuries did not "[arise] out of the ownership, maintenance, or use of a motor vehicle." § 627.736(1), Fla.Stat. (1991). Finlayson's alleged desire to stop Hurst's automobile and retrieve his son does not equate with a desire to gain possession or use of the vehicle itself. Rather, Hurst's automobile was merely the situs of Trott's injury. See Allstate Ins. Co. v. Famigletti, 459 So.2d 1149 (Fla. 4th DCA 1984) (reversing judgment in favor of plaintiffs where injuries arose out of defendant's attack, and automobile was merely situs of attack); General Accident Fire & Life Assurance, Ltd. v. Appleton, 355 So.2d 1261 (Fla. 4th DCA 1978) (reversing judgment in favor of plaintiff where injuries were caused by fists of criminals who assaulted plaintiff, and automobile was only physical situs, not instrumentality, of assault); Allstate Ins. Co. v. Furo, 588 So.2d 61 (Fla. 5th DCA 1991) (noting a sufficient nexus between the automobile and injury exists only when it is shown the assailant desired either possession or use of the victim's automobile). Trott's mere presence in Hurst's vehicle at the time of the shooting does not satisfy the nexus test. Fortune Ins. Co. v. Exilus, 608 So.2d 139 (Fla. 4th DCA 1992).
Further, no UM coverage exists because Finlayson's gun, and not Hurst's automobile, produced Trott's injuries. Niglio v. Omaha Property and Casualty Ins. Co., 679 So.2d 323 (Fla. 4th DCA 1996). No person could reasonably conclude Trott's injuries were covered under his automobile liability policy. *720 Race v. Nationwide Mut. Fire Ins. Co., 542 So.2d 347 (Fla.1989) (holding phrase "arising out of the ownership, maintenance, or use" of a motor vehicle as contained in UM policy should be given same interpretation as in automobile liability policies). Final summary judgment in favor of St. Paul is affirmed.
The same analysis applies to Jonathan Finlayson's claim for declaratory relief against Fortune, although the facts of his injury present a somewhat closer question. Nevertheless, while Jonathan was allegedly injured by glass from the automobile's windshield, neither PIP nor UM coverage is available to him. William Finlayson's gun, and not Hurst's automobile, produced Jonathan's injuries. Niglio. Therefore we affirm the final summary judgment as to Fortune.
AFFIRMED.
PARIENTE and GROSS, JJ., concur.