736 So.2d 1151 (1999)
Karl BLISH, Petitioner,
v.
ATLANTA CASUALTY COMPANY, Respondent.
No. 92,984.
Supreme Court of Florida.
May 6, 1999.
*1152 Michael L. Reda of Cianfrogna, Telfer, Reda, Faherty & Anderson, P.A., Titusville, Florida, for Petitioner.
Wendy D. Jensen of Rogers, Dowling, Fleming & Coleman, P.A., for Respondent.
SHAW, J.
We have for review Atlanta Casualty Co. v. Blish, 707 So.2d 1178 (Fla. 5th DCA 1998), based on conflict with Hernandez v. Protective Casualty Insurance Co., 473 So.2d 1241 (Fla.1985), and Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla.1984). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash Blish.
Karl Blish left work on January 6, 1995, drove a coworker home, spent a few minutes at the coworker's house, and then headed home himself. Blish's pickup truck had a blowout on U.S. 1 in Brevard County and he pulled over to change the tire. He jacked up the truck and was loosening the lug nuts when he was attacked from behind by several assailants. The men choked and beat him (he testified that he "might have went unconscious") and stole between eighty and a hundred dollars from his pocket. After the attack, Blish recovered his glasses, did his best to finish changing the tire, and drove home ("I just barely got the tire on and I drove home."). He did not go to the hospital or call police because he did not think that he had been hurt badly enough ("I was just going to write it off as a loss, I guess."). A week later, he experienced severe abdominal pain, was rushed to the hospital in an ambulance, and was diagnosed as suffering from a ruptured spleen, which doctors removed.
Blish filed a claim for benefits under the PIP portion of his auto insurance policy with Atlanta Casualty Company ("Atlanta"). Atlanta denied the claim, and Blish filed suit. The county court granted summary judgment in favor of Atlanta, and the circuit court sitting in its appellate capacity *1153 reversed, ruling that Blish had established a sufficient nexus between his use of the truck and his injuries. The district court reversed, concluding that the attackers had made no effort to possess or use Blish's truck:
In our case, there is nothing in the record to suggest that the assailant wanted anything other than the victim's money. No effort was made to possess or use the automobile. The fact that the victim was changing his tire when he was robbed does not make the robbery "arise from the maintenance or use" of his vehicle.
Blish, 707 So.2d at 1179. This Court granted review based on conflict with Hernandez v. Protective Casualty Insurance Co., 473 So.2d 1241 (Fla.1985) (finding PIP coverage where the insured was stopped by police for a traffic infraction and was injured during the ensuing arrest), and Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla.1984) (finding PIP coverage where the insured was shot in the face by a stranger and pulled from her car, which the stranger then stole).
Blish claims that the district court erred in reasoning that recovery must be denied because the assailants made no attempt to "possess or use" the vehicle. He contends that under the facts of this case there was a sufficient connection between the maintenance and use of the vehicle and the resulting injury to justify PIP coverage. We agree.
The controlling statute, section 627.736, Florida Statutes (1995), requires that motor vehicle insurance policies issued in Florida provide personal injury protection (PIP) benefits for bodily injury "arising out of the ownership, maintenance, or use of a motor vehicle":
627.736 Required personal injury protection benefits....
(1) REQUIRED BENEFITS.Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured ... to a limit of $10,000 for loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle ....
§ 627.736, Fla. Stat. (1995) (emphasis added).[1]
This Court in Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla.1984), explained that the phrase "arising out of in the above statute means that there must be "some nexus" between the motor vehicle and the injury:
Construction of the clause "arising out of the use of a motor vehicle" is an [easy] matter. It is well settled that "arising out of does not mean "proximately caused by," but has a much broader meaning. All that is required is some nexus between the motor vehicle and the injury.

Novak, 453 So.2d at 1119 (emphasis added). The Court went on to explain that the phrase "some nexus" should be given a liberal construction in order to effectuate legislative intent to extend coverage broadly:
The clause, "arising out of the use of a motor vehicle," is framed in such general, comprehensive terms in order to express the [legislative] intent to effect broad coverage. Such terms should be *1154 construed liberally because their function is to extend coverage broadly.
Id. (citation omitted).
The Court subsequently circumscribed the parameters of the "some nexus" standard in Hernandez v. Protective Casualty Insurance Co., 473 So.2d 1241 (Fla.1985), by pointing out that PIP coverage is not applicable where the motor vehicle, through pure happenstance, is the situs of an unrelated injury-causing event:
[I]t is not enough that an automobile be the physical situs of an injury or that the injury occur incidentally to the use of an automobile, but that there must be a causal connection or relation between the two for liability to exist.
Id. at 1243 (quoting Reynolds v. Allstate Insurance Co., 400 So.2d 496, 497 (Fla. 5th DCA 1981)).
Both this Court and the district courts have applied the above rules to deny coverage where the motor vehicle was the mere situs of an unrelated injury-causing event,[2] and to find coverage where there was "some nexus," i.e., some "causal connection or relation," between the vehicle and the injury.[3] The results under these standards, however, have not been consistent.[4] In an effort to resolve these inconsistencies, *1155 we now set forth the following guidelines.
First, legislative intentas always is the polestar that guides an inquiry under section 627.736(1). Thus, as noted above, the language of the statute must be liberally construed in order to effect the legislative purpose of providing broad PIP coverage for Florida motorists. Novak. Second, a key issue in deciding coverage is whether the type of injury sustained by the insured was reasonably in the minds of the contracting parties. Accordingly, when construing the phrase "arising out of noted above, courts should ask: Is the injury a reasonably foreseeable consequence of the use (or the ownership, or the maintenance) of the vehicle?
In the present case, Blish's injuries were an unfortunate but eminently foreseeable consequence of the use and maintenance of the pickup truck: Blish was using the truck for routine transportation purposes after dark when the truck sustained a mechanical failure, i.e., a blowout; he responded in a normal and foreseeable fashion, i.e., he attempted to change the tire on site with the tools and spare tire he carried in the vehicle for that purpose; he was in the act of repairing the vehicle, i.e., he was turning the lug nuts on the faulty tire, when he was injured.
Under these circumstances, the actual source of the injury-causing blow is not dispositivewhether it came from a negligent driver in a passing vehicle or a violent group of passing thugs is not decisive. It was the use and maintenance of the truck that left Blish stranded and exposed to random acts of negligence and violence, and he was in the very act of performing emergency maintenance on the vehicle when he was injured.
Acts of violence are an ageless and foreseeable hazard associated with the use of a vehiclefor once a person sets out in a vehicle, he or she is vulnerable. The highwaymen and desperados of bygone times preyed on the wayfarer, and these villains are with us still. Each Floridian today, when he or she gets behind the wheel, faces a variety of dangers: a car-jacking at a stoplight, or a strong-arm robbery at a deliberately staged rear-end collision, or a road rage assault in rush hour traffic, or even a random shooting by an anonymous sniper from an overpass. The danger is particularly acute when the motorist is stranded as the result of a disabled vehicle.
The scenario in the present case is every motorist's nightmare. Losses resulting from a violent encounter with this ageless road hazardi.e., the highwayman or opportunistic thugmight reasonably be said to be very much in the contemplation of Florida consumers when they are contracting to purchase auto insurance. The motivation of the assailantwhether it be to "possess or use" the vehicle, or to steal the victim's wallet or purse, or simply to harm the victimis a nonissue to the consumer. We note that insurance companies were placed on notice at the time of enactment of section 627.736(1)and certainly by the time that Novak and Hernandez were decidedthat the statute contemplates broad coverage.
Based on the foregoing, we hold that Blish's injuries were a reasonably foreseeable consequence of his use and maintenance of the pickup truck. The injuries thus "aris[e] out of the ownership, maintenance, or use of a motor vehicle" and are covered under the PIP portion of his auto insurance policy. We quash Blish.[5]
It is so ordered.
HARDING, C.J., and WELLS, PARIENTE, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., concurs specially with an opinion.
*1156 ANSTEAD, J., specially concurring.
In my view, this Court started down a slippery slope when it first approved a recovery for automobile insurance benefits growing out of a criminal assault in Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla.1984). Later, in Hernandez v. Protective Casualty Insurance Co., 473 So.2d 1241 (Fla.1985), the Court made a lukewarm attempt to limit such recoveries by seeming to require "that there must be a causal connection or relation between the two for liability to exist". Id. at 1243 (quoting with approval from Reynolds v. Allstate Insurance Co., 400 So.2d 496, 497 (Fla. 5th DCA 1981)). Nevertheless, the Court in Hernandez approved a recovery that arguably could not meet this requirement. The Hernandez decision and the multitude of subsequent decisions simply cannot be reconciled with any consistent theory of recovery other than one that, like Novak and Hernandez, liberally permits a recovery if any connection is shown between the injury and the automobile.
If I were writing on a clean slate, I would agree with the dissent of Justice Ehrlich in Novak (repeated in Hernandez). Dissenting in Novak, Justice Ehrlich wrote:
Ms. Novak had started her automobile and was prepared to back up and drive to the bank when she was accosted and shot upon refusal to accede to the demands of Mr. Endicott to give him a ride or the use of her vehicle. I agree with the majority that Ms. Novak's being shot meets the policy definition of "accident." However, I cannot accept the further conclusion of the majority opinion that this accident arose out of the use of the automobile. Suppose Ms. Novak was accosted when she was within a foot or two of her car, with keys in hand, and shot when she refused to give her assailant her keys. Would it be contended that PIP benefits are applicable? Of course not. Then the only difference between the assumed facts and the ones at hand is the situs of the attack, and the mere fact that the attack took place when Ms. Novak was in the automobile does not result in the attack having arisen out of the ownership, maintenance or use of the automobile. See Reynolds v. Allstate Insurance Co., 400 So.2d 496 (Fla. 5th DCA 1981).
Whether Ms. Novak was standing outside of the car or was seated in the car when shot makes no difference. The use of the car was not involved in the act of violence and that is the dispositive element in order to bring into play one's entitlement to PIP under the policy of insurance.
Novak, 453 So.2d at 1120. However, we are way down the road now and reaping what we sowed in those cases. At least it can be said that the legislature and insurance underwriters have been aware of our decisions in Novak and Hernandez, and since the statutory and policy language has not been changed, recoveries like the one we approve today should come as no surprise.
NOTES
[1] The relevant language in the insurance policy in the present case was consistent with the above statute:

PERSONAL INJURY PROTECTION
We will pay, in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:
(a) 80% of medical expenses, and
(b) 60% of work loss, and
(c) replacement services expenses, and
(d) an automobile related accidental death benefit of $5,000 incurred as a result of bodily injury, caused by an accident arising out of the ownership, maintenance or use of a motor vehicle....
[2] See, e.g., Allstate Ins. Co. v. Jun, 712 So.2d 415 (Fla. 5th DCA 1998) (ruling in favor of insurer where insured was driving home from work at night when assailants blocked her car at intersection, shot at and robbed her); Trott v. Finlayson, 690 So.2d 718 (Fla. 4th DCA 1997) (denying PIP coverage where insureds fled domestic disturbance and were shot by pursuer as they drove away in car); Underwriters Guarantee Ins. Co. v. Therrien, 640 So.2d 234 (Fla. 4th DCA 1994) (denying PIP coverage where victim, who was not in car, was involved in altercation with interlopers, who were in car, and was bitten by dog, which was in interlopers' car); Fortune Ins. Co. v. Exilus, 608 So.2d 139 (Fla. 4th DCA 1992) (denying coverage where driver was approached at stop sign by stranger from another car; stranger then opened driver's door; driver sped away and was shot in leg); Allstate Ins. Co. v. Furo, 588 So.2d 61 (Fla. 5th DCA 1991) (denying coverage where victim's stepdaughter and assailant were involved in domestic dispute, and victim was shot by assailant as he drove stepdaughter in her car past assailant's home); Parker v. Atlas Mut. Ins. Co., 506 So.2d 475 (Fla. 1st DCA 1987) (denying coverage where victim and girlfriend were sitting in car in parking lot and unknown assailant threw rock through front window); Doyle v. State Farm Mut. Auto. Ins. Co., 464 So.2d 1277 (Fla. 3d DCA 1985) (denying coverage where insured drove car into driveway, began exiting vehicle, was approached by stranger who demanded money, and was then shot by stranger when insured reached to take out his wallet); Allstate Ins. Co. v. Famigletti, 459 So.2d 1149 (Fla. 4th DCA 1984) (denying coverage where victims were involved in feud with neighboring family, and where victims were shot by neighbor who jumped out from behind tree and sprayed victims' car with machine gun fire); Reynolds v. Allstate Ins. Co., 400 So.2d 496 (Fla. 5th DCA 1981) (denying coverage where insured got in his car, was struck unconscious by unknown assailant who had hidden in back seat, was driven several miles, and was dumped from car); Stonewall Ins. Co. v. Wolfe, 372 So.2d 1147 (Fla. 4th DCA 1979) (denying coverage where boys were riding on back of car and one boy with gun fell off; as boy got up and walked towards car, he fell, gun discharged, and bullet struck other boy in eye).
[3] See, e.g., Hernandez v. Protective Cas. Ins. Co., 473 So.2d 1241 (Fla.1985) (finding PIP coverage where driver was pulled over for traffic infraction and was injured during ensuing arrest); Government Employees Ins. Co. v. Novak, 453 So.2d 1116 (Fla.1984) (finding PIP coverage where driver was approached by stranger, shot in face, and pulled from car, and assailant drove away in the car); State Farm Mut. Auto. Ins. Co. v. Barth, 579 So.2d 154 (Fla. 5th DCA 1991) (finding coverage where insured was waiting in driver's seat in mall parking lot when stranger opened passenger door, got in front seat, said, "Drive bitch," beat driver when she refused, exited car, got in another car, and drove away).
[4] Compare Novak (finding PIP coverage where driver was approached by stranger, shot in face, and pulled from car, and assailant drove away in the car), with Reynolds (denying coverage where insured got in his car, was struck unconscious by unknown assailant who had hidden in back seat, was driven several miles, and was dumped from car). See also Jun, 712 So.2d at 418 (Sharp, J., dissenting) ("This area of the law is hopelessly confused, contradictory and badly in need of clarification.").
[5] We disapprove Jun; Trott; Exilus; Furo; Parker; Doyle; Famigletti; and Reynolds. As explained above, the motivation of the assailant is not dispositive when deciding coverage under section 627.736(1).