809 So.2d 85 (2002)
Courtney FARRER, as assignee of Gulf Coast Transportation, and Cooperative Leasing, Inc., Appellants,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation, Brown & Brown, Inc., and Barry Brannen, Appellees.
Nos. 4D01-228, 4D01-397.
District Court of Appeal of Florida, Fourth District.
February 27, 2002.
*87 Justin C. Johnson and David A. Paul of Justin C. Johnson & Associates, P.A., and Michael J. Keane and Brandon S. Vesely of Keane, Reese, & Vesely, P.A., St. Petersburg, for appellants.
Judith W. Simmons and Amy M. Tamargo of Simmons & Dunlap, Tampa, for appellee United States Fidelity and Guaranty Company.
Neil Rose and Steven J. Chackman of Bernstein & Chackman, P.A., Hollywood, for appellees Brown & Brown, Inc. and Barry Brannen.

ON MOTION FOR REHEARING
WARNER, J.
We deny the motion for rehearing, withdraw our previously issued opinion, and substitute the following in its place.
Appellant, Courtney Farrer, appeals and United States Fidelity & Guaranty Company ("USF & G") cross-appeals from a final summary judgment entered partly in favor of USF & G and partly in favor of Farrer in this insurance dispute.[1] The trial court found that USF & G had a duty to defend but not to indemnify as to two of Farrer's counts. It also found no duty to either defend or indemnify as to a third count. We disagree and conclude that, at a minimum, material issues of fact remain that should have precluded the entry of summary judgment in this matter.
In 1993, Farrer was a passenger in a taxi cab owned by Gulf Coast Transportation, Inc. and Cooperative Leasing, Inc. ("the insureds"). At some point during the ride, the driver of the cab drove Farrer to a remote location and sexually assaulted her. Farrer sued the insureds for negligent hiring, negligent retention, and breach of contract for safe transportation. She did not sue the driver. During the underlying tort action, it was revealed that, prior to the attack on Farrer, the cab driver had been arrested for indecent exposure (to which he entered a nolo contendere plea) and loitering for prostitution, both of which occurred in June of 1987. Also, the Hillsborough County Public Transportation Commission issued two warnings to the driver, one for a dress code violation and the second for being discourteous to a passenger by asking sexual questions. That passenger filed an incident report in May of 1992 in which she stated that the driver had made advances towards her and touched her leg.
The underlying tort action against the insureds settled, and a stipulated final judgment in the amount of $700,000 was entered against them. Pursuant to the settlement agreement, the insureds agreed to assign to Farrer any and all rights under their commercial general liability policy issued by USF & G. That included the right to be substituted in the insureds' declaratory action concerning USF & G's duty to defend and cover any losses under the policy. Subsequently, Farrer exercised that right by joining the declaratory *88 action and amending the complaint, as to USF & G, to allege a claim for breach of contract and for other declaratory relief. USF & G disputed coverage and any duty to defend. The trial court entered summary judgment on cross motions, finding no coverage under the policy on any of the counts against USF & G and no duty to defend on two of the three counts. The court did not set forth a specific reason supporting its ruling.
Under Section I of the policy, "Coverage A." provides for bodily injury and property damage liability. Within "Coverage A.," section 1.b states:
This insurance applies to "bodily injury" and "property damage" only if:
(1) The bodily injury or property damage is caused by an "occurrence" that takes place in the "coverage territory."
"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Coverage A." also contained certain exclusions, which included the following:
This insurance does not apply to
a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.
. . . .
g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any ... "auto" ... owned or operated by or rented or loaned to any insured.
Of the six issues raised on appeal, we address those relating to "Coverage A.," which include: (1) whether Farrer's claim was an "occurrence" under the commercial general liability policy; (2) whether coverage was excluded by the "expected or intended" exclusion of the policy; and (3) whether coverage was excluded by the "arising out of exclusion of the policy. Farrer contends that these issues should be resolved in favor of a finding that USF & G had a duty to defend and indemnify. USF & G cross-appeals that the court erred in finding a duty to defend on two of the three counts. We conclude that USF & G had a duty to defend, but issues of fact remain concerning whether it had a duty to indemnify. We affirm as to the issues regarding "Coverage B.," insurance for personal injuries.
An insurer's duty to defend is broader than the insurer's duty to indemnify. See McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So.2d 692, 695 (Fla. 4th DCA 1999). The duty to defend is determined solely by the allegations in the complaint, which must set forth facts that bring the case within the coverage of the policy. See id. Meanwhile, the duty to indemnify is determined by the facts adduced at trial or during discovery. See Sunshine Birds & Supplies, Inc. v. United States Fid. & Guar. Co., 696 So.2d 907, 912 (Fla. 3d DCA 1997).

I. An "occurrence" under the policy.
The policy provides coverage for bodily injury that "is caused by an `occurrence' that takes place in the `coverage territory.'" The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Emphasis added). On this issue, we are guided by the principle that "coverage clauses are construed in the broadest possible manner to affect the greatest extent of coverage." McCreary, 758 So.2d at 695.
USF & G contends that the coverage incident in this case was not an accident, but was an intentional act not covered by the policy. It relies on State Farm Fire & Casualty Co. v. Compupay, Inc., 654 *89 So.2d 944 (Fla. 3d DCA 1995)("Compupay"), to support this argument. In Compupay, a former employee sued Compupay and Compupay's manager for damages stemming from the manager's sexual harassment and sexual discrimination of the employee. The employee also alleged a failure to investigate and negligent retention of the manager. Compupay's insurer denied coverage and refused to provide Compupay with a defense. After the claim was settled, Compupay sued its insurer for its failure to defend. The trial court granted summary judgment in Compupay's favor. On appeal, the third district determined that the manager's acts were intentional and, based on the allegations in the employee's complaint, there was no duty to defend. See id. at 947. Importantly, the complaint alleged that Compupay was aware of the manager's past practices. The court concluded that the manager's "continuing pattern of sexual harassment and discrimination ... [was] predictable and should have been within Compupay's expectation." Id. Thus, "the events were not an accident, and not an `occurrence.'" Id.
A closer case to the present one is Sunshine Birds & Supplies. In Sunshine, two employees residing on the business premises sexually molested minors during non-business hours on the business premises. Like the complaint in Compupay, the complaint in Sunshine alleged negligent hiring and retention of the employees. However, unlike the complaint in Compupay, the Sunshine complaint pled alternatively that the employer had constructive, as opposed to actual, knowledge of the employees' past behavior. Because of the alternatively pled allegations, the third district held that the insurer had a duty to defend. See Sunshine Birds & Supplies, Inc., 696 So.2d at 909-11. In the underlying tort action in this case, Farrer pled that the cab driver's criminal record was "known or reasonably should have been known" by the insureds prior to the date of the incident. (Emphasis added). Because Farrer pled constructive knowledge in the alternative, USF & G cannot avoid its duty to defend on this ground.
As to USF & G's duty to indemnify, a question of fact remains to be resolved as to whether the insureds' knowledge of the cab driver's past behavior demonstrated actual knowledge of the driver's "proclivity in general" to commit sexual assault. Id. at 911. Specifically, the driver's prior arrests for loitering for prostitution and indecent exposure and his history of making an advance towards a previous passenger do not lead to the certain conclusion that the driver would commit sexual assault. There is no record evidence that the employer knew of any violent acts committed by the driver towards another person. Indeed, the lack of similarity between the employee's former behavior and his behavior in this case distinguishes this case from all others cited. Therefore, as to USF & G's duty to indemnify, a dispute remains to be resolved by the trier of fact as to whether the insureds had actual knowledge of the cab driver's "proclivity" to commit sexual assault.

II. The "expected or intended" exclusion.
The policy excludes coverage for bodily injury "expected or intended from the standpoint of the insured." Exclusionary clauses in insurance contracts are strictly construed. See Westmoreland v. Lumbermens Mut. Cas. Co., 704 So.2d 176, 179 (Fla. 4th DCA 1997). USF & G argues that the incident was expected from the standpoint of the insured in light of the cab driver's background. We disagree and conclude that, at a bare minimum, a factual issue remains to be resolved as to whether *90 the driver's background would lead to the expectation that the employee would drive a passenger to a remote location and sexually assault her.
USF & G looks to the settlement agreement between Farrer and Gulf Coast to support its claim that it is undisputed that Farrer's injury was expected from the standpoint of the insured. In that agreement, Gulf Coast acknowledges that prior to the attack on Farrer it was provided with notice of "the abhorrent and/or criminal behavior and the general unfitness of the driver at the time ... to work as a taxi cab driver." USF & G extrapolates from that statement that Gulf Coast had actual knowledge of the potential of sexual assault. However, the "abhorrent/criminal behavior" which Gulf Coast might have had notice of did not involve conduct suggesting that the driver had violent tendencies. USF & G submits that the "expected" exclusion would deny coverage where an employer knows of wrongful conduct by an employee and later an injury occurs caused by the employee engaging in the same general type of conduct. We do not characterize sexual battery as the same general type of conduct as the non-violent conduct Gulf Coast apparently knew about the driver.
In Grange Mutual Casualty Co. v. Thomas, 301 So.2d 158 (Fla. 2d DCA 1974), the court considered whether the "expected" injury exclusionary language excludes injuries which naturally and foreseeably flow from a willful act. The court rejected that contention and stated, "[w]e see no difference in substance between the language of the exclusionary provision here and that in the policies limiting the exclusion simply to `intentional' injuries." Id. at 159. Although in this case we are not dealing with a willful act on the part of Gulf Coast in negligently retaining the driver, we agree with Grange that the expectation of injury must be more than mere foreseeability. Other jurisdictions which have construed this type of exclusion suggest that the actor must know with a high degree of certainty that certain consequences will result from his or her actions. See, e.g., City of Carter Lake v. Aetna Cas. & Sur. Co., 604 F.2d 1052, 1058-59 (8th Cir.1979) ("For the purposes of an exclusionary clause in an insurance policy the word `expected' denotes that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions." (footnote omitted)); United States Fire Ins. Co. v. CNA Ins. Cos., 213 Ill.App.3d 568, 157 Ill.Dec. 660, 572 N.E.2d 1124, 1128-29 (1991) (same); see also Ohio Cas. Ins. Co. v. Henderson, 189 Ariz. 184, 939 P.2d 1337, 1343 (1997) ("We express the rule as follows: (1) the insured must subjectively intend both the act and to cause some injury; (2) the intent may be actual or may be inferred by the nature of the act and the accompanying substantial certainty that some significant harm will occur." (Emphasis added)). Whether the standard is substantial probability of harm or substantial certainty of harm, we agree with City of Carter Lake that "[t]he results cease to be expected and coverage is present as the probability that the consequences will follow decreases and becomes less than a substantial probability." 604 F.2d at 1059. Questions of probability are inherently questions of fact. Here, material issues of fact remain as to whether this incident is covered by the policy. There is, however, a duty to defend the claims as the allegations of the complaint come within the policy coverage.

III. The "arises out of" exclusion.
The policy excludes coverage for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of *91 any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured." USF & G argues that because the sexual assault took place in the taxi cab, Farrer's claims are not covered under the policy. We disagree.
The "arising out of" clause is used in insurance policies in both coverage clauses and exclusionary provisions. On the one hand, insuring or coverage clauses are construed "in the broadest possible manner to effect the greatest extent of coverage." Westmoreland, 704 So.2d at 179. On the other hand, "exclusionary clauses in liability insurance policies are always strictly construed." Id. Because the "arising out of" clause in this case is an exclusion of liability, it must be strictly construed.
USF & G has cited many cases dealing with the use of the phrase "arising out of in insuring clauses, mostly in Personal Injury Protection ("PIP") Clauses. See, e.g., Stilson v. Allstate Ins. Co., 692 So.2d 979 (Fla. 2d DCA 1997); Pena v. Allstate Ins. Co., 463 So.2d 1256 (Fla. 3d DCA 1985). Blish v. Atlanta Casualty Co., 736 So.2d 1151 (Fla.1999), is the most recent case cited involving PIP coverage in an automobile policy. The insured under the PIP policy was driving home when his tire blew out. When he stopped to fix it, he was assaulted by unknown persons. He sued for PIP benefits, claiming that they were due for his injuries "arising out of the ownership, maintenance, or use of a motor vehicle," as required both by the policy and section 627.736, Florida Statutes (1995). See Blish, 736 So.2d at 1152-53. The supreme court proceeded to review its prior opinions. In Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla.1984), it had explained the phrase "arising out of as requiring "some nexus" between the motor vehicle and the injury. Novak noted that "[t]he clause, `arising out of the use of a motor vehicle,' is framed in such general, comprehensive terms in order to express the [legislative] intent to effect broad coverage. Such terms should be construed liberally because their function is to extend coverage broadly." 453 So.2d at 1119 (citations omitted). However, in Hernandez v. Protective Casualty Insurance Co., 473 So.2d 1241, 1243 (Fla. 1985), the court restricted this broad interpretation somewhat when the motor vehicle is, "through pure happenstance," the situs of an unrelated injury-causing event. The Hernandez court said that "[i]t is not enough that an automobile be the physical situs of an injury or that the injury occur incidentally to the use of an automobile, but that there must be a causal connection or relation between the two for liability to exist." 473 So.2d at 1243 (quoting Reynolds v. Allstate Ins. Co., 400 So.2d 496, 497 (Fla. 5th DCA 1981) (citations omitted)). Noting the inconsistent ways in which these rules had been applied, the Blish court set forth guidelines for the "nexus" standard:
First, legislative intentas alwaysis the polestar that guides an inquiry under section 627.736(1). Thus, as noted above, the language of the statute must be liberally construed in order to effect the legislative purpose of providing broad PIP coverage for Florida motorists. Second, a key issue in deciding coverage is whether the type of injury sustained by the insured was reasonably in the minds of the contracting parties. Accordingly, when construing the phrase "arising out of" noted above, courts should ask: Is the injury a reasonably foreseeable consequence of the use (or ownership or the maintenance) of the vehicle?
736 So.2d at 1155 (citation omitted).
Because violence against motorists is a common occurrence and one that has foreseeable *92 consequences which can be said "to be very much in the contemplation of Florida consumers when they are contracting to purchase auto insurance," the Blish court held that the injuries to the motorist from the assault arose from the use of the vehicle so that PIP benefits were payable for his injuries. Id.
Concurring with the majority in Blish, Justice Anstead conceded that, by its previous decisions, the court already had gone "way down the road" of expanding the coverage of PIP benefits and stated:
If I were writing on a clean slate, I would agree with the dissent of Justice Ehrlich in Novak (repeated in Hernandez). Dissenting in Novak, Justice Ehrlich wrote:
Ms. Novak had started her automobile and was prepared to back up and drive to the bank when she was accosted and shot upon refusal to accede to the demands of Mr. Endicott to give him a ride or the use of her vehicle. I agree with the majority that Ms. Novak's being shot meets the policy definition of "accident." However, I cannot accept the further conclusion of the majority opinion that this accident arose out of the use of the automobile. Suppose Ms. Novak was accosted when she was within a foot or two of her car, with keys in hand, and shot when she refused to give her assailant her keys. Would it be contended that PIP benefits are applicable? Of course not. Then the only difference between the assumed facts and the ones at hand is the situs of the attack, and the mere fact that the attack took place when Ms. Novak was in the automobile does not result in the attack having arisen out of the ownership, maintenance or use of the automobile. See Reynolds v. Allstate Ins. Co., 400 So.2d 496 (Fla. 5th DCA 1981).
Whether Ms. Novak was standing outside of the car or was seated in the car when shot makes no difference. The use of the car was not involved in the act of violence and that is the dispositive element in order to bring into play one's entitlement to PIP under the policy of insurance.

Novak, 453 So.2d at 1120.
736 So.2d at 1156.
We discuss Blish in detail, including Justice Anstead's concurring opinion, to highlight the lengths that the court has gone to liberally construe the "arising out of" language in a PIP insuring clause. We contrast this with the rule that a narrow and strict interpretation must be given to such language in an exclusionary clause. Justice Anstead's concurring opinion implies that even a slightly narrower interpretation of the "arising out of language would result in no PIP coverage for such claims.
The supreme court itself has refused to apply the liberal nexus interpretation in PIP cases to other contexts. In Race v. Nationwide Mutual Fire Insurance Co., 542 So.2d 347, 349 (Fla.1989), the court did not apply that standard to the interpretation of coverage in an uninsured motorist clause. In that case, a motorist was assaulted by the owner of another vehicle after stopping to exchange insurance information in a fender/bender accident. Rather than apply the liberal PIP nexus standard, the court looked to the construction of the "arising out of language in automobile liability policies:
In analyzing liability coverage for an act arising out of the ownership, maintenance, and use of a motor vehicle, 6B J. Appleman, Insurance Law and Practice, section 4317 (Buckley ed.1979), states:

*93 It has been stated that the liability of an insurer under the "ownership, maintenance, or use" provision should be measured in accord with the terms of a policy as understood by a person of reasonable intelligence. The word "coverage" as used in automobile liability policy means the sum of risks which the policy covers. Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained.
Rather, the courts have only required that some form of causal relationship exist between the insured vehicle and the accident. However, liability does not extend to results distinctly remote, though within the line of causation.
. . . .
Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.
(Footnotes omitted.)
Id. The court held that the injuries suffered from the assault did not arise out of the use of the motor vehicle to afford uninsured motorist coverage to the insured. See id. at 351.
Most recently, the Race test was used to deny coverage under an automobile policy in Lancer Insurance Co. v. Gomez, 799 So.2d 334, 337 (Fla. 3d DCA 2001). A jitney bus was hijacked by three men and driven to a deserted grove where the passengers were robbed, and one passenger was shot and killed. One of the other passengers sued the bus owner, and the case proceeded against Lancers Insurance Company, which carried an automobile liability policy on the bus. The policy provided coverage for injuries caused by the ownership, maintenance, or use of a covered automobile. Applying the Race rules, the court determined that the injuries from the robbery were not covered under the automobile policy. See id. The court stated:
Injuries caused by criminal assaults in and about an automobile, but which are not caused by the automobile itself, or do not arise out of the operation, maintenance, or use of an automobile, are not covered under a policy of automobile liability or uninsured motorist coverage. Race, 542 So.2d at 351. The auto must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury. Taylor v. Phoenix Ins. Co., 622 So.2d 506, 509 (Fla. 5th DCA 1993).
Id.
In Westmoreland, we examined the use of "arising out of" in the context of an exclusion in a homeowner's policy. The tragic facts revealed that a automobile was left running in a garage. The fumes were able to enter the house, killing all of the occupants. The homeowner's policy contained an exclusion for bodily injury "arising out of the ownership, maintenance, use... of motor vehicles." Judge Farmer reviewed the extensive case law on the construction of the "arising out of" clause in the insuring context and concluded:
The clear import of all of these cases is that, even though the term arising out of in an insuring clause must be liberally construed in favor of coverage, the term nevertheless requires some causal relationship between the injury and use or operation of a motor vehicle, short of proximate cause. Accordingly, the link *94 between an injury and an automobile is not alone, without more, determinative of the construction of the policy provision.
704 So.2d at 185-86.
Westmoreland relied on St. Paul Fire & Marine Insurance Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA 1973), in which a passenger in an automobile was injured when a bottle, thrown from another vehicle, startled the driver of the passenger's vehicle, causing him to lose control and have an accident. The passenger sued the person who threw the bottle from the passing automobile, and coverage was sought under that person's homeowner's policy which had an exclusion that the policy did not apply to the ownership or use of an automobile. Writing for the Court, Judge Owen compared the "did not apply" language to the "arising out of" exclusion and determined that even using the "arising out of" test, the thrower's liability did not arise out of the use of the automobile. See id. at 120-21. In discussing Thomas in Westmoreland, Judge Farmer noted:
First, we note that Thomas saw a distinct difference in the way arising out of should be construed in an insuring clause from the way it should be construed in an exclusionary clause. 273 So.2d at 120 ("[W]e are constrained to follow the well settled and almost universally accepted principle of construing the exclusion in a manner which affords the broadest coverage." [e.s.]). Moreover, although Judge Owen acknowledged that some courts have construed arising out of broadly in the sense of origination or appearance, he nevertheless also concluded that:
"no court has permitted the exclusionary clause of the personal liability policy to become applicable where the causal connection between the injury and the use of the automobile was not at least as strong as the `arising out of standard required under the automobile policy." [e.s.]
273 So.2d at 120. Hence, even a broad construction of the term in an exclusion would not nullify coverage where the use of the motor vehicle was merely fortuitous and the particular manner of use of the vehicle would not have altered or affected the real act of negligence, i.e., throwing the bottle from the vehicle. 273 So.2d at 120-121.
Most important to the present case, it is the obvious intent of the insurer that leads to the strict or narrow construction of arising out of in this exclusionary clause. As Judge Owen pointed out, there is specific intention in excluding some claims from the homeowner's coverage where a motor vehicle is used. As he explained, the purpose served the insurer in inserting such an exclusion in the homeowner's provision is for:

"the automobile policy and the homeowner's policy to be complementary to one another, that is, that the coverage under one takes up where the other leaves off, with neither hiatus nor overlapping of such coverage."
273 So.2d at 120. That same underwriting intent would be even more apparent when both homeowners and motor vehicle coverages appear in the same policy.
704 So.2d at 183 (second emphasis added). Similarly, a comprehensive general liability policy should be construed as leaving no gap in coverage between it and an automobile policy. An automobile policy protects its insured for liability arising out of the use of that vehicle, while the general liability excludes coverage arising from the use of the vehicle. Generally, courts have been reluctant to find duplicate coverage under the two types of policies. See, e.g., Muzzio v. Auto-Owners Ins. Co., 799 *95 So.2d 272, 274 (Fla. 2d DCA 2001). The interpretation of the clauses should be complementary.
Considering the foregoing, and consistent with the principle that an exclusionary clause should be narrowly construed, we adopt the rules of Race as providing the narrower construction of a clause excluding liability for injuries "arising out of" the use of a motor vehicle. Applying those three principles to the facts of this case, it is clear that the sexual assault did not "arise out of" the use of the vehicle. While the assault occurred within the auto, it did not arise out of the inherent nature of the vehicle. More importantly, the automobile did not itself produce the injury, thus failing to satisfy Race's third test. We therefore conclude that under the analysis of Race, as applied in Gomez, the sexual assault which occurred in this case did not arise out of the use of the automobile, and the exclusion does not negate coverage under USF & G's policy.

IV. Conclusion.
As to "Coverage A.," insurance for bodily injury, we conclude that the incident did not arise out of the use of a vehicle so as to exclude coverage. However, issues of fact remain as to whether it constituted an "occurrence" within the policy provisions and whether the cab driver's prior conduct created the expectation that the sexual assault in this case would occur. As such, the trial court erred in entering summary judgment. The allegations of the complaint bring this case within the policy coverage; therefore, there is a duty to defend. Whether there is a duty to indemnify will depend on what facts are proven on remand.
With respect to "Coverage B." for insurance for personal injuries, we conclude that as a matter of law USF & G had no duty to defend or indemnify.
We do not address USF & G's claim that Gulf Coast Transportation, Inc. and Cooperative Leasing, Inc. were not insureds, as that issue was not raised at the summary judgment hearing. For purposes of that hearing, USF & G assumed without conceding that they were insured. We affirm without comment as to the remaining issues raised.
We reverse and remand for further proceedings in this case.
TAYLOR, J., and DELL, JOHN W., Senior Judge, concur.
NOTES
[1] The trial court's summary judgment order was only on those counts against USF & G. Therefore, the counts against the remaining named appellees will not be addressed in this appeal and have been abated by the trial court.